249 S.W.2d 513 (1952)
BURKE
v.
RENICK et al.
No. 28257.
St. Louis Court of Appeals, Missouri.
May 20, 1952.
*514 Robert W. Hammerstein, Edwin A. Smith, St. Louis, for plaintiff.
J. D. Leritz, St. Louis, for defendant-appellant William Fred Renick.
Barnhart & Wood, St. Louis, for defendant-respondent Herman Howard Randell, Jr.
HOUSER, Commissioner.
This litigation arose out of an automobile collision at the intersection of Brannon Avenue and Winona Street in the City of St. Louis. The automobiles driven by William Fred Renick (northbound on Brannon) and Herman Howard Randell (west-bound on Winona) collided at approximately the center of the intersection. Halpin T. Burke, a guest in Renick's car, joined both Renick and Randell as defendants. Each defendant filed a cross-claim against the other. Burke settled his case, stepped out of the lawsuit, and defendants went to trial on their cross-claims. The jury found against each cross-claimant on his claim against the other. The trial court granted each cross-claimant a new trial, and Renick appealed from the order granting Randell a new trial of Randell's cross-claim.
The appeal raises the question whether Randell was guilty of contributory negligence as a matter of law and whether Instruction No. 11 was proper.
Turning to the facts, it is conceded that the streets leading to the point of collision were both about 30 feet wide, hard surfaced and dry. The streets intersect at right angles. Brannon is level. There is a small grade on Winona, going west. The collision occurred at night. Renick had two passengers with him in the front seat of his car. In Randell's car there were four passengers. On the southeast corner of the intersection there is a flat facing north, which sets back about 15 feet from the sidewalk which runs along the south side of Winona. There is a porch on the front end of the flat. The flat sets 10 to 12 feet east of the east curb line of Brannon.
Renick testified that his average speed as he drove northwardly on Brannon just before he reached Winona was about 25 or 28 miles an hour; that he slowed down to about 20 miles an hour at the intersections; that there were no cars parked on the east side of Brannon just south of Winona; that he was driving 2 feet from the center of Brannon; that when about 40 feet from the intersection he took his foot off the accelerator, put it on the brake and looked to the east for traffic; that he was traveling about 22 or 23 miles an hour at that time; that he saw no headlights or automobiles; that as he coasted forward he looked to the west, and when he was 3 to 6 feet into the intersection (by that time he had taken his foot off the brake and put it on the accelerator) he looked to the east, and then saw the other car coming; that the other car was then 2 or 3 feet east of the intersection; that it had not left the curb line; that it was a foot or two on the right of the center line of Winona "going pretty fast * * * a lot faster" than the 28 miles an hour the witness' car was traveling. Renick thought he put his foot on the brake and he "might have swerved to the left" to avoid a collision. Renick stated that his right fender collided with the left front fender of the other car; that he did not sound a horn; that one approaching Winona looking eastwardly could see between 20 and 30 feet down Winona; that after going back to the scene it appeared that the building on the southeast corner does not obstruct the view as much as he first estimated; that "you can see 40 or 50 or 60 feet."
As a part of his case Renick read from Randell's deposition, as admissions against interest, the following: that Randell was driving the car which collided with Renick's; that the weather was clear and that there was nothing to interfere with Randell's vision; that when Randell first came to the intersection, and when 15 to 20 feet east of the east curb line of Brannon, he looked south, in which direction he could see about 60 feet; that he saw nothing, then looked to the right, then looked back and saw the Renick car "just about" the south curb line of Winona; that Randell did not sound the automobile horn immediately before the collision; that Randell "started" *515 to put on his brakes but did not succeed in doing so; that "he hit me before I could"; that at no time did Randell change his course from the time he was 75 feet east of Brannon until the time of the collision, but continued straight westwardly; that after the collision Randell's car was located on the northwest corner of the intersection, facing northwest, and Renick's car was on the north side of Winona, west of Brannon facing southeast.
In support of his cross-claim Randell testified that he was driving west on Winona; that in the middle of the block before reaching Brannon he was driving approximately 25 miles an hour between 1 and 2 feet to the right of his center line; that when about 75 feet east of Brannon he took his foot off the accelerator and his car slowed down some; that he first looked to his left, when the front of his automobile was between 15 and 20 feet east of the east curb line of Brannon; that then he could see approximately 60 feet south on Brannon but saw no northbound traffic thereon; that he then looked to his right, saw no traffic on Brannon, then again looked back to his left at a time when the front of his automobile was 7 or 8 feet into the intersection, and then saw an automobile at the south curb line of Winona; that the speed of his car at that time was approximately 20 miles an hour; that he could not judge the speed of the Renick car coming at him in a split second; that Randell attempted to apply his brakes but was unable to do so before he was "hit"; that the right front of Renick's car collided with the left side of Randell's car; that Randell's automobile came to rest on the sidewalk and terrace at the northwest corner of the intersection.
On cross-examination Randell testified that the visibility was good; that cars were parked almost to the corner on the south side of Winona; that he did not at any time change his course until the time of the collision; that the building interfered with his vision and that he did not sound a horn. In answer to the question "* * * if you had continued to look to your left from the time you first looked, when you were 15 or 20 feet away, there would have been nothing to have prevented you from observing the approach of Mr. Renick's automobile from the south on Brannon, was there?" Randell answered "When I first looked the house partially obstructed my view, and there were cars parked * * * along the east line of Brannon, and if I had kept looking to the left and never looked to the right * * * I would have seen something. The cars partially obstructed my view, but if I continued on looking nothing would have obstructed my view except the automobiles after I got past the house." He testified he could have seen an automobile with headlights on 100 to 200 feet away after he got past the house. He testified that under existing conditions he could have made an emergency stop in 40 feet at 20 miles an hour, in 60 feet at 25 miles an hour; that at the time of collision his car was about 2 feet north of the center line of Winona, and the front end about 2 feet west of the center line of Brannon.
Halpin T. Burke, testifying for Randell, stated that when the Renick automobile was about 2 blocks south of Winona Renick was driving 40 to 45 miles an hour; that Renick continued to drive about the same speed; that Renick's car was traveling 40 to 45 miles at the time Burke first saw Randell's car; that Renick's car was about 15 feet south of the south curb line of Winona when Burke first saw Randell's car; that he observed no change in the speed of the Renick car after he first saw the Randell car; that Randell's car was 10 or 15 feet east of Brannon when he first saw the Randell car.
Thomas Edward Randell, testifying for his brother, was riding with his brother at the time of the collision. He stated that the maximum speed traveled was 25 to 30 miles an hour and that they were traveling 20 to 25 miles an hour at the time of the accident.
Both cross-claimants relied on assignments of primary negligence in order to establish their claims and each charged the other with contributory negligence in defense of his adversary's claim.
*516 On this appeal Renick contends that a verdict should have been directed for him because Randell expressly and deliberately admitted, and never disputed, facts which establish a complete defense, that of contributory negligence as a matter of law. The determination contributory negligence vel non ordinarily is a question for the jury and in passing upon the question in this case we must take the view of the evidence most favorable to cross-claimant Randell. Rayburn v. Fricke, Mo.App., 243 S.W. 2d 768. From that viewpoint it appears that on approaching the intersection Randell slowed down and looked in both directions before starting across; that at a point 15 to 20 feet before he reached the intersection he looked to his left and saw no northbound traffic within a distance of 60 feet south of the intersection. This gave him the right to assume that there was no immediate danger from the left, for it was not necessary for him to anticipate the approach of a vehicle from the south at an unlawful rate of speed. Then, in obedience to his duty to look in both directions, Harding v. Peterson, Mo.App., 227 S.W.2d 88, loc.cit. 92, Randell looked to his right. Upon entering the intersection, at 20 miles an hour, he again looked to his left, at which time he saw Renick's automobile about to enter the intersection. Since it was his duty to look in both directions, as well as to look ahead, and since it is an impossibility for a person to perform all three acts at once, it was not contributory negligence as a matter of law for Randell to fail to look continually to the south as he crossed the intersection. Harding v. Peterson, supra. Furthermore, we think that reasonable minds might hold that at the time Randell turned his gaze from the south to the north he was entitled to assume that he would enter the intersection before any northbound traffic would do so and that any traffic appearing from the south would yield to him the right of way, when he entered the intersection first, as required by city ordinance. Hoppe, Inc. v. St. Louis Public Service Co., Mo.App., 227 S.W.2d 499; Hoppe, Inc., v. St. Louis Public Service Co., 361 Mo. 402, 235 S.W.2d 347, syllabus 1. It appears to us that the issue was properly submitted to the jury for the reason that reasonable minds could very well differ on the question whether Randell was guilty of contributory negligence.
Appellant, Renick, further contends that the trial court improperly granted Randell a new trial; that the reason assigned by the trial court for its action (error in giving Instruction No. 11) is incorrect. Instruction No. 11 follows:
"The Court instructs the jury that although you may find from the evidence that defendant William Fred Renick was guilty of negligence as charged by defendant Herman Howard Randell, Jr., yet if you further find and believe from the evidence that defendant Herman Howard Randell, Jr. was guilty of an act, or acts, of negligence as charged in other instructions herein and that such negligence concurred with that of defendant William Fred Renick, if you so find he was guilty of negligence in causing the collision mentioned in the evidence, that is, that both parties were guilty of negligence and that such joint negligence caused the collision and injury and damage claimed in the cross-claim of the defendant Herman Howard Randell, Jr., then your verdict must be against defendant Herman Howard Randell, Jr. on his cross-claim."
Respondent, Randell, concedes that the instruction standing alone is a correct abstract statement of the law but maintains that it is erroneous when read in conjunction with appellant's Instructions Nos. 2 and 3.
Appellant Renick's Instruction No. 3 directed a verdict for Renick on Renick's cross-claim, and directed a verdict against Randell on Randell's cross-claim, upon a finding that Randell failed to exercise the highest degree of care "while operating his automobile westwardly on Winona Avenue on the occasion mentioned in evidence" and failed to look, or to slacken the speed of, or turn or swerve his automobile, or failed to give warning of his approach and that such failure caused the collision. Respondent contends that appellant's Instructions *517 Nos. 3 and 11, read together, gave the jury a roving commission to find respondent guilty of contributory negligence in failing to stop (look?), slacken speed, swerve or warn, without hypothesizing any facts for the jury to find in order to have established a duty upon respondent to either stop (look?), slacken his speed, swerve, or warn, and erroneously assumed the existence of such a duty upon the part of respondent. (Parentheses ours.) This contention must be sustained on the authority of Stakelback v. Neff, Mo.App., 13 S.W.2d 575 and Devoto v. St. Louis Public Service Co., Mo.App., 238 S.W.2d 66. Instruction No. 3 did not require the jury to find any facts from which a duty to look, etc., would arise. Neither the position, direction, speed nor any other fact relating to the Renick automobile is required by the instruction to be found. There is a complete absence of any requirement to find any facts upon which to predicate the duties required by the instruction to be discharged by Randell. There was no duty on Randell to take any of the precautions hypothesized in the instruction "unless there was apparent danger of a collision, which basic fact the jury was not required to find." Stakelback v. Neff, supra [13 S.W.2d 577]. This error was sufficient ground to sustain the action of the trial court in granting Randell a new trial.
This disposes of the case and renders unnecessary an analysis of Instruction No. 2, which respondent contends violates the rule of law that a motorist who first arrives at and enters an intersection has the right of way only if he is exercising the highest degree of care and is not negligent in arriving at such position; that in such case the right of way is not an unqualified right to proceed irrespective of existing conditions, but contemplates lawful conduct on his part, i. e. that he has not been negligent in approaching the intersection, or in failing to give warning of his approach, or in failing to exercise care after the danger of collision became apparent, which rule is announced in the following cases: McCombs v. Ellsberry, 337 Mo. 491, 85 S.W.2d 135; Brooks v. Menaugh, Mo.Sup., 284 S.W. 803; Parsons v. Himmelsbach, Mo.App., 68 S.W.2d 841; Long v. Binnicker, 228 Mo.App. 193, 63 S.W.2d 831. It is sufficient to suggest that if the case is retried Instruction No. 2 should be redrafted so as to avoid any possibility of such an interpretation by including in the instruction a negative finding in each of the above respects with regard to the conduct of cross-claimant Renick on approaching the intersection.
The order of the trial court granting Randell a new trial on his cross-claim was correct and should be affirmed.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The order of the trial court is, accordingly, affirmed.
BENNICK, P. J., and ANDERSON and RUDDY, JJ., concur.