Louis WITT, Plaintiff-Appellant,

v.

Ronald James PETERSON, Defendant-Respondent.

No. 46251.

Supreme Court of Missouri, Division No. 2.

March 10, 1958.

Mogab & Jaudes, Charles A. Mogab, Donald S. Hilleary, St. Louis, for appellant.

Charles F. Hamilton, Morris E. Stokes, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for respondent.

ELMO B. HUNTER, Special Judge.

Louis Witt, plaintiff-appellant, and Ronald James Peterson, defendant-respondent, on February 11, 1956, shortly after midnight, had a collision with their automobiles in the intersection of Union and Lindell Boulevards in St. Louis, Missouri. Plaintiff brought suit against defendant for $10,000 for his alleged resultant injuries. The jury returned a defendant's verdict, and this appeal resulted.

Plaintiff's version of the accident is that he was in his Ford automobile going south on Union Avenue which is about 60 or 70 feet wide at the point where it intersects Lindell Boulevard, which runs east and west. The intersection of these two avenues is a wide oval shaped one. There are six traffic lanes on Union Avenue; three for northbound traffic and three for southbound traffic. There are syncronized electric traffic signals for both north and southbound traffic on Union Avenue and for east and westbound traffic on Lindell Avenue. Plaintiff's Ford was in the curb or west lane of traffic. As he approached the intersection there were two cars occupying the two southbound lanes to his left. One was stopped right on the line, and the other was approximately half a car's length behind the line. The traffic lights for southbound traffic were red. It was snowing and the streets were slippery. Plaintiff stopped his Ford about half a car's length behind the front of the second car, so as to place the three cars in a staggered position. The lights changed to green. The southbound car in the lane nearest the center of the street remained stationary. The one in the middle lane pulled up to the line and stopped. Plaintiff started forward and as stated by him, "kept on going because the light was in my favor." He heard the screeching of brakes, "so I just started to turn and look, and he [defendant] was right there; * * * right on top of me" * * * "I would say no more than a foot or two approximately" when plaintiff first turned to look. On being asked where the collision occurred, plaintiff said, "Well, in the lane on the north side of Lindell. It wasn't in the center of Lindell. * * * Had you gotten almost to the center line? A. Well, yes." Plaintiff also testified that

from the time he had started forward with the green light until he heard the screeching of brakes and saw defendant's car a foot or two away he did not look to his left for traffic coming from his left side. We refer to his own statement of it when he was asked, "When the car to the left of you stopped, did that cause any curiosity on your part as to why he stopped—that something might be coming? A. It aroused my curiosity, but I was already past him when he stopped. * * * Actually, you went the width of two lanes and were in the lane just north of the center of Lindell when your car was struck. Is that right? A. That's right." "Q. And you never did look to your left until you heard something, and then the other car [defendant's] was between one and two feet from you? Is that right? A. Yes, sir." According to his judgment he was going 10 to 15 miles an hour when the front of his Ford car got even with the front of the car to his left. He had then gone 10 or 15 feet forward. At that point he could have made an emergency stop in, "I would say two or three feet, it might have been more"—but that was his best judgment of it. At another point he was asked: "Q. What speed had you accelerated to from the moment you started up until the time of the impact? A. I wasn't doing over 10 or 12 miles an hour." The front of defendant's Chrysler automobile hit plaintiff's Ford on the left (driver's) side at about the door.

Defendant's version of the accident is that he was in his Chrysler automobile westbound on his way home on Lindell Boulevard in the traffic lane closest to the center of the street. His maximum speed as he was approaching the intersection was 25 miles per hour. There were three electric signals facing him. As he neared the intersection the electric signal at the cutoff for traffic to turn right on Union Avenue was green. He slowed down, watched the traffic light and proceeded on past it. As he approached the second light, before entering the intersection of Lindell and

Union Avenues, it also was green for westbound traffic, but it turned amber approximately as he passed it. And, as he passed the second traffic light that put him out into the intersection of the two boulevards. His first reaction was to slow down but then decided to try to get out of the intersection before the north-south traffic would start up. He accelerated his car but almost instantly became aware of plaintiff's car coming rapidly south. He had about reached the center line of Union Avenue when he first saw plaintiff's Ford car coming forward from the west traffic lane. No other north or southbound cars were then moving. The mentioned two stopped automobiles were about a couple of car widths to the right of his car's path. We refer to defendant's statement as to what then occurred: "When I first saw his car, I slammed on my brakes, honked my horn and turned, veered to the left, toward the south." "Q. Did you cross the center of the line? A. Yes." And the vehicles collided. Defendant stated he did not see the light change from amber to red before the collision, but was not looking at the light then as he was watching plaintiff's car come forward.

James Wrasmann, who with his wife was traveling in a car some 50 or 60 feet behind defendant's car, witnessed the accident. He and his wife testified on plaintiff's behalf. He testified that the traffic lights were amber just before defendant reached the intersection, and turned red "at the same time he [defendant] began to enter the intersection"; that defendant's speed was then about 20 miles per hour, and that defendant slightly accelerated his speed after entering the intersection. His wife testified defendant entered the intersection with the red light against him.

On this appeal plaintiff has contented himself with a single contention of error. He asserts the trial court erred in giving Instruction No. 5 on behalf of the defendant "because it fails to require a finding that plaintiff had reason to believe that a collision would occur unless precautionary

measures were taken, and by so failing gave the jury a roving commission to find facts which establish no duty to act and predicate a finding of contributory negligence thereon."

Instruction No. 5 reads in part as follows: " * * * if you find and believe from the evidence that on the occasion mentioned in evidence plaintiff drove and operated his vehicle into the intersection when the traffic light was green in his favor, and if you further find that prior to or after entering said intersection plaintiff, by keeping a proper lookout under the circumstances described in the evidence, could have seen defendant's automobile, if you so find, traveling westwardly in said intersection, and if you further find that plaintiff thereafter could have stopped his automobile and thus and thereby have avoided the collision which occurred, if you so find, and if you further find that plaintiff thereafter drove and operated his automobile southwardly into the path of and in front of defendant's automobile, if you so find, and if you further find that the conduct of plaintiff in the respects mentioned herein constituted a failure on his part to exercise the highest degree of care for his own safety and contributed to cause and bring about the collision mentioned in the evidence, then the Court instructs you that the plaintiff is not entitled to recover in this case and you should return a verdict in favor of the defendant whether or not you find that the defendant himself was negligent in the operation of his automobile on said occasion."

 It is the duty of a motorist entering an intersection to exercise the highest degree of care to maintain a careful and vigilant lookout ahead and laterally, and to see what a person in the exercise of the highest degree of care for the safety of himself and others would be expected to see under similar circumstances. For where one is charged with the duty to look, and to look is to see, he must be held to have seen what looking would

reveal. Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73; Weis v. Melvin, Mo.Sup., 219 S.W.2d 310. A green light does not relieve of this duty, nor does it confer an absolute right to proceed across the intersection regardless of the movement of other traffic. The motorist is not entitled to rely solely on the favorable signal; nor is he entitled to drive blindly into the intersection without looking. The duty of care to be exercised remains commensurate with the circumstances, one of which, of course, is the green light in his favor. See discussion 60 C.J.S. Motor Vehicles § 284, p. 661; Annotation—Liability for Accident at Street or Highway Intersection As Affected By Reliance Upon or Disregard of Traffic Sign, Signal or Marking, 164 A. L.R. 8, 64; Collier v. St. Louis Public Service Company, Mo.App., 298 S.W.2d 455, 459–60; Politte v. Miller, Mo.App., 301 S.W.2d 839, 842. Thus, plaintiff owed a duty to exercise the highest degree of care as he started forward with the green light and drove his car into the intersection, and this included the duty to maintain a lookout both laterally and ahead for whatever could be seen under the circumstances.

The jury in other instructions had been told that both drivers were in law bound to exercise the highest degree of care in the operation of their motor vehicles at the time and place in question. It also had been instructed that the term "highest degree of care" meant that degree of care which a very careful and prudent driver would use under the same or similar circumstances, and that a failure to use such care is negligence.

 We are unable to agree with plaintiff's contention that the instruction gave the jury a roving commission to find facts which established no duty to act. Under Instruction No. 5 the jury was asked to find whether or not plaintiff was negligent by driving into the intersection without maintaining any lookout ahead or laterally for defendant's car *after it was in the intersection traveling straight west-*

*wardly.* The uncontroverted evidence showed that both cars were traveling in straight paths that would inevitably· cross and that while each was in the intersection it was visible to the other driver, if that other but looked. Other than the question of the color of the traffic light, which question was specifically hypothesized, there was no material divergence in the evidence of the parties as to the essential facts and circumstances which concurred to bring about the collision. The jury was instructed to determine whether or not in the light of that evidence and the court's instruction defining negligence the plaintiff was negligent in failing to keep any lookout, as he testified. Juries selected according to law are presumed to have ordinary intelligence and common sense, and certainly a jury composed of reasonable men would not be likely to interpret the instruction to permit a finding that plaintiff was negligent for not looking at a time when by looking he could not have seen any apparent danger unless he took precaution to prevent the same. In view of the uncontroverted facts disclosed in the evidence and the limitations contained in the instruction we believe the instruction is sufficient in the complained of respect. Cf. Horrell v. St. Louis Public Service Company, Mo.Sup., 277 S.W.2d 612; Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496; Taylor v. Alexander, Mo. Sup., 283 S.W.2d 588; Nelson v. Evans, 338 Mo. 991, 93 S.W.2d 691. Certainly where there is no material divergence in or denial of essential facts, the ultimate question of negligence may be submitted by reference to facts and circumstances shown by the evidence without specific hypothesization in the instructions. If a party deems a hypothesized fact or situation not to have been clearly or sufficiently hypothesized in the instruction he should offer a clarifying or amplifying instruction. Hooper v. Conrad, supra.

Plaintiff relies particularly upon the case of Stakelback v. Neff, Mo.App., 13 S.W. 2d 575, cited in Greenwood v. Bridgeways,

Inc., Mo.App., 243 S.W.2d 111, and in Burke v. Renick, Mo.App., 249 S.W.2d 513. The Stakelback case, and its announced rule, was discussed by this court in Taylor v. Alexander, supra, and what was said there distinguishes the Stakelback case from the present one. In De Voto v. St. Louis Public Service Co., Mo. App., 251 S.W.2d 355, the same court that decided the Stakelback case was faced with about the same contention as plaintiff makes here, and likewise distinguished the two cases on substantially the same basis announced in the Taylor case and applicable to the instant case. See, also, Nelson v. Evans, 338 Mo. 991, 93 S.W.2d 691; Patton v. Hanson, Mo., 286 S.W.2d 829.

■ The rule is that no appellate court shall reverse any judgment unless it believes that error was committed by the trial court against appellant, and materially affecting the merits of the action. § 512.-160, V.A.M.S. While at least by hindsight, and with the aid of the losing party's minute examination thereof, it is seldom that an instruction cannot be improved, we are unable to agree with plaintiff's contention that the giving of the instant instruction under the particular facts of this case was reversible error.

Defendant contends not only that the instruction does submit all necessary elements for the jury to find that plaintiff was guilty of contributory negligence in failing to keep a lookout but also that plaintiff was guilty of contributory negligence as a matter of law because of his failure to see defendant's automobile prior to the collision. In view of the jury's verdict and what we have said regarding the only claim of error in the trial, it becomes unnecessary for us to discuss that contention. The judgment is affirmed. It is so ordered.

STORCKMAN, P. J., and EAGER, J., concur.

LEEDY, J., not sitting.