Ernestine O'BRYANT, Plaintiff-Respondent,

v.

BLACK AND WHITE CAB CO., Inc., a Corporation, Defendant-Appellant,

and

Van Doran Smith, Defendant-Appellant.

No. 23376.

Kansas City Court of Appeals.

Missouri.

Nov. 6, 1961.

William A. Rundle, Jr., Thomas D. Cochran, Morrison Hecker, Buck & Cozad, Kansas City, for appellant.

Laurence B. Silks, John R. Monaghan, Silks, Silks & Curtis, Kansas City, for respondent.

HUNTER, Presiding Judge.

This is an appeal by defendants, Black and White Cab Co., Inc., and Van Doran Smith, from a $1,600 judgment against them for damages for personal injuries in favor of plaintiff, Ernestine O'Bryant. The sole question presented is whether plaintiff was guilty of contributory negligence as a matter of law in which event the trial court should have sustained defendants' motion for a directed verdict filed at the close of all the evidence.

■ In reviewing the evidence to determine if plaintiff was guilty of contributory negligence as a matter of law it is the appellate court's duty to consider the evidence in the light most favorable to plaintiff and to give her the benefit of all of the reasonable inferences from it. The evidence so viewed is as follows.

Plaintiff's automobile and defendants' taxicab collided in the intersection of Twenty-fifth Street and Brooklyn Avenue in Kansas City, Missouri, about 11:00 p. m. on June 2, 1959, injuring plaintiff. Brooklyn Avenue is fifty feet wide and Twenty-fifth Street is twenty-six feet wide. Brooklyn is described as being a four-lane street with two lanes for northbound traffic and two lanes for southbound traffic. There is also a parking lane on each side. Twenty-fifth Street apparently has only a single lane for eastbound traffic and a single lane for westbound traffic.

Just prior to the collision plaintiff was traveling eastwardly on Twenty-fifth Street, and stopped with the front of her car west of the pedestrian lane for a stop sign controlling eastbound traffic on Twenty-fifth Street at Brooklyn. The intersection was just a short distance from the baseball park and there was heavy southbound traffic on Brooklyn because the baseball

game crowd was commencing to leave. Northbound traffic was light.

Plaintiff remained stopped at the intersection for about three minutes waiting for a traffic break in the southbound traffic. While she looked first to the left and then to the right. Then she proceeded to look to the left again and to the right again and didn't see any traffic coming from the south and she proceeded to cross the street. When she first looked to the north she saw cars a half block away proceeding from the north. On her second look to the north these cars were still a quarter of a block away. On her first look to the south, and she could see for a full block to the south, she saw no traffic coming from the south, traveling north on Brooklyn. In her second look to the south there was a line of southbound traffic that had proceeded past the intersection of Twenty-fifth Street, and the rear car in that line was a Black and White Cab which was then about a fourth of a block past her, going south on Brooklyn. Although she could still see for a full block to the south, a distance of 634 feet, and looked, she saw no cars that were northbound on Brooklyn. She testified that there was no traffic northbound in that entire block from Twenty-fifth to Twenty-sixth Street on Brooklyn. The intersection was clear of traffic from the north and south and she proceeded across it gradually increasing her speed "like I would normally drive in traffic". A car headed west passed her about the middle of the street. Another westbound car, a Ford, was stopped at the stop sign on the east side of Brooklyn. Plaintiff kept her eyes forward—to the front (east) and when the rear of her car had gone at least three or four feet past the center line of Brooklyn it was suddenly struck by the taxicab proceeding north on Brooklyn. At the time of impact she was looking forward to the traffic that was facing her. "It was because I had gotten my view very clearly from south of Brooklyn and north of Brooklyn and I had to watch the traffic that was facing me." She did not see the taxicab approaching prior to

the time of impact. At the time of the impact she was traveling ten miles per hour. Her car was struck toward its rear by the front of the taxicab and the taxicab's bumper locked with her car's back fender. The impact occurred in the inside lane, i. e., the lane nearest the center of the street for northbound traffic. The right side of her car was two or three feet from the south edge of the intersection. Her car was knocked around and against the mentioned Ford car still stopped at the stop sign on the east side of Brooklyn.

Defendant Smith, the taxi driver, testified that he had just delivered a passenger from the ball park to 2402 or 2403 Brooklyn. He received a radio call that they had other passengers for him at the ball park. He was on his way back to the ball park in his leftbound lane headed north on Brooklyn when the accident occurred. He stated he was traveling between 28 and 30 miles per hour although the speed limit on Brooklyn was 25 miles per hour. He was traveling approximately 25 miles per hour at the time of impact although he put on his brakes and laid down an 8 to 16 foot skid mark. He did not attempt to swerve the cab. "I was in the left-bound lane, she was in about the middle, the first lane of the southbound traffic when I saw her, and that was when we hit." Her whole car was in the outside lane, next to the curb, and her front bumper was entering the inside lane, when he first saw her, and at that moment the front bumper of his cab was 16 feet back of the south boundary of the intersection. The impact took place on the east half of Brooklyn. At 28 to 30 miles an hour it would take him 100 feet to stop his taxicab. The impact occurred 5 feet north of that south boundary. There were no cars in front of him for a block and none behind him for a block.

■ An important feature of the case was whether defendant's taxicab was the same taxicab that plaintiff had observed as being the last car in the line of southbound traffic south of the intersection at the time

she took her second look to her right before proceeding into the intersection. Plaintiff testified it was the same car, and although there was evidence that defendant cab company operated some 23 vehicles of a similar description its Witness McCoy conceded this was the closest cab to the ball park at the time and that he had made no effort to search the company's call slips to determine whether any other cab was in the vicinity. From this and other evidence the jury could properly have found that it was the same taxicab. The importance of this is that if it was the same taxicab plaintiff is supported in her contention that after she had last seen it south of the intersection proceeding south it made a U turn and proceeded back north on Brooklyn to the point of collision. This, plaintiff contends, is why she did not see any car northbound on Brooklyn when she looked to the right the second time just before she began to cross the intersection. On this point defendant cab driver was asked:

"Q. So as you travelled south on Brooklyn, can you tell me to what point on Brooklyn that you proceeded before you made your *left*-hand or U turn? A. My *left*-hand was Twenty-fifth and Brooklyn, was where I turned around and went up to Twenty-sixth and came back down Brooklyn.

"Q. Then your testimony is that you turned *right* at Twenty-fifth and Brooklyn? A. Yes, sir.

"Q. And went around the block? A. Yes, sir.

"Q. And then came down Twenty-sixth Street? A. Yes, sir, and back onto Brooklyn.

"Q. Before you proceeded north on Brooklyn? A. Yes, sir."

In view of the cab driver's conflicting statement as to which direction he turned it is easily conceivable that the jury disregarded his statement on that subject. While no witness testified they saw him make the U turn the time element involved and the other circumstances are such as to

permit the jury to draw the inference that he did so. Just prior to the collision he had been driving south from the ball park. He had delivered a passenger to the 2400 Block on Brooklyn which is north of the intersection in question. It was his intention to return to the ball park for another passenger. If he had turned either left or right at Twenty-fifth and Brooklyn, as he said, then plaintiff could not have seen him south of the intersection proceeding south, as she stated. If plaintiff is to be believed, and the jury apparently did believe her, the cab driver did not turn either right or left at Twenty-fifth Street but proceeded on past that intersection and in a short interval was headed back north on Brooklyn. Two witnesses testified they did not see the taxicab on Brooklyn prior to the time it was (1) about 75 feet from the intersection and (2) about 30 to 60 feet from the intersection.

■ With this evidence in mind we consider defendants' contention that plaintiff was guilty of contributory negligence as a matter of law because after her second look to her right before she started across the intersection she looked only straight ahead from the time she entered the intersection until the impact occurred near the center of the intersection. Defendants cite and quote from Witt v. Peterson, Mo.Sup., 310 S.W.2d 857, 860: "It is the duty of a motorist entering an intersection to exercise the highest degree of care to maintain a careful and vigilant lookout ahead and laterally, and to see what a person in the exercise of the highest degree of care for the safety of himself and others would be expected to see under similar circumstances. For where one is charged with the duty to look, and to look is to see, he must be held to have seen what looking would reveal. Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73; Weis v. Melvin, Mo.Sup., 219 S.W.2d 310." And, also cited somewhat similar language from such cases as Folluo v. Gray, Mo.App., 256 S.W.2d 273; Burton v. Moulder, Mo.Sup., 245 S.W.2d 844; Frandeka v. St. Louis Public Service Company,

Mo.Sup., 234 S.W.2d 540; and Branscum v. Glaser, Mo.Sup., 234 S.W.2d 626. The quoted general rule of law is well settled and is not denied by anyone. It is the general duty of a motorist to keep a vigilant and careful outlook ahead and laterally upon entering an intersection and he must look efficiently so as to see what there is to be seen, and proceed as one in the exercise of the highest degree of care under the particular circumstances should proceed.

However, this is not to say that plaintiff is contributorily negligent as a matter of law for proceeding into the intersection at a time when after two looks both to her right and left she observed no oncoming cars from her right for one full block and none from her left that presented any danger and prior to the point of collision did not again look to her right but rather looked ahead to observe the one car headed west on Twenty-fifth Street toward her and that passed her about the middle of the intersection, and the other car that might start forward at any time at the stop sign on the east side of Twenty-fifth Street. It is defendants' position she should have seen the taxicab coming north on Brooklyn at the time of her second look to her right. But plaintiff's evidence is that she did see it then and it was headed south, away from her. Defendant also suggests she should have looked right again as she was in the intersection. In view of the traffic conditions and the other circumstances described whether she should, whether the taxicab at such time could have been then seen headed back north on Brooklyn, and whether she was negligent in not so looking, are questions we believe that properly belong to the jury. We note defendants unsuccessfully did submit the issue of plaintiff's contributory negligence to the jury in two instructions.

In the case of Kolie v. Ruby, Mo.App., 300 S.W.2d 545, 547, involving the same type of question as before us—i. e., defendant had looked once and not seen defendant who later pulled around some stopped cars and came on to collide with plaintiff this court stated, " 'Negligence is ordinarily a question for the jury. It is always so where different minds might reasonably draw different conclusions from the evidence as given. Negligence cannot be conclusively established, as a matter of law, upon a state of facts on which fair minded men of ordinary intelligence may differ as to the inferences to be drawn therefrom. * * * Before a court would be authorized to declare a plaintiff guilty of contributory negligence, as a matter of law, the evidence must be such as to permit of no other reasonable conclusion, giving the plaintiff the benefit of every reasonable inference that may be drawn from the evidence in his favor.' "

■■ It is not mandatory for a driver of a motor vehicle who has stopped at the intersection and carefully looked ahead and laterally and who has seen no oncoming cars within any distance that might present danger, while proceeding through the intersection to keep a continuous look in all directions. Where he should look and for how long depends upon the circumstances present at the time. The ultimate and controlling question is whether he is negligent in the circumstances presented by having failed to exercise the highest degree of care in the operation of the motor vehicle. If reasonable men might differ as to whether he was negligent under the circumstances, it is for the jury and not the court to decide the issue of negligence presented.

In Burke v. Renick, Mo.App., 249 S.W. 2d 513, the court ruled that where a motorist slows down and looks in both directions before starting across an intersection and again looks to his left at a point 15 to 20 feet before reaching it and sees no traffic to his left within a distance of 60 feet from the intersection he has a right to assume (until he is put on notice to the contrary) that there is no immediate danger from his left, and he need not anticipate the approach of a vehicle from that direc-

tion at an unlawful rate of speed. The court concluded that the issue was properly submitted to the jury for the reason that reasonable minds could well differ on the question whether he was guilty of contributory negligence.

In Schmittzehe v. City of Cape Girardeau, Mo.Sup., 327 S.W.2d 918, 921, plaintiff stopped at the intersection and looking, saw no vehicle approaching from the south. She started across the intersection. "She did not again look to the south." The court said, "The question actually presented here is whether, considering the evidence in the light most favorable to plaintiff, the trial court should have ruled that plaintiff was guilty of contributory negligence as a matter of law in proceeding across the intersection without looking a second time to the right after she had looked from the stop sign and had seen no approaching vehicle.

"It is, of course, the duty of a motorist entering an intersection to exercise the highest degree of care and to maintain a careful and vigilant lookout ahead and laterally ahead. He cannot drive blindly into the intersection, or rely solely on the fact that he has the right-of-way. Witt v. Peterson, Mo.Sup., 310 S.W.2d 857(1, 3). Neither does he fulfill the duty imposed upon him by stopping at a stop sign and then driving into the intersection without making proper observations to determine that there is no cross traffic in or so near to the intersection as to constitute an immediate hazard. 60 C.J.S. Motor Vehicles § 359c. In this case plaintiff stopped at the stop sign and looked, and for a distance of approximately 115 feet saw no approaching traffic. She then entered the intersection, and under the evidence favorable to her, the defendant was sufficiently far away that she properly appropriated the right-of-way, and she then had the right to proceed absent actual or constructive knowledge of the approach of other traffic which, in the exercise of the highest degree of care, she knew or should have known was not going to yield the right-of-way to her. She received no warning from defendant. While she had the duty to maintain a look-out ahead and laterally ahead she could not keep an uninterrupted watch in two directions, she was not required to look constantly to one side, and she did not need to keep turning her head from side to side. 60 C.J.S. Motor Vehicles § 287. In addition, the Robert automobile was ahead of her, and even though stopped, it required at least some attention on her part.

*   *   *   *   *   *

" *   *   * Under these circumstances whether or not her failure to look a second time when defendants say she should was the proximate cause of the collision would certainly be a jury question." See, also, Carpenter v. Kessner, Mo.App., 330 S.W.2d 270.

Giving the plaintiff, as we must, the benefit of every reasonable inference that may be drawn from the evidence in her favor precludes us, under the peculiar facts of this case, from ruling that she was guilty of contributory negligence as a matter of law.

The judgment is affirmed.

All concur.