Nadine JONES, Plaintiff-Respondent,

v.

Albert FRITZ, Defendant-Appellant.

No. 7980.

Springfield Court of Appeals.

Missouri.

Jan. 16, 1962.

Motions for Rehearing or to Transfer
Overruled Feb. 8, 1962.

Almon H. Maus, Monett, for defendant-appellant.

Edward V. Sweeney, Monett, for plaintiff-respondent.

STONE, Judge.

On this appeal, defendant seeks reversal of a judgment in the sum of $10,000 for personal injuries sustained by plaintiff as the result of a vehicular collision at the intersection of Ninth and Cleveland Streets in Monett, Missouri, on October 27, 1958. Plaintiff submitted her case upon defendant's alleged negligence in failing to stop before entering the intersection (in violation of a city ordinance) and in failing to yield the right of way. The sole issue here is whether plaintiff was contributorily negligent as a matter of law.

Ninth is a north-and-south street about thirty feet in width with a blacktop surface from curb to curb. Cleveland is an east-and-west street with a two-lane blacktop roadway (about twenty feet in width) in the center of the street and an unpaved strip (about ten feet in width) on each side of the blacktop. For more than five years prior to the collision under consideration, the intersection of Ninth and Cleveland had been "a four-way stop," established as such by a city ordinance (received in evidence) which required all vehicles to stop before entering the intersection and provided for erection of a stop sign on each corner. At the time of accident, this intersection was protected by such signs, each of which was lettered "4 WAY STOP," and by a blinking light, flashing red in all directions, suspended over the center of the intersection. Both plaintiff and defendant were familiar with the intersection. Plaintiff, then thirty-nine years of age, a housewife, the mother of two boys, and a part-time bookkeeper at the local radio station in Monett, was traveling east on Cleveland in a 1956 Ford tudor en route from her home to a local cold storage warehouse to get some apples for the evening meal. Defendant, then sixty-four years of age, a farmer and livestock hauler, was traveling north on Ninth in a 1955 Chevrolet automobile en route from the Parakeet Beer Tavern in Monett (where, so his story ran, he had, although "tired, wore out, not feeling good," visited with a neighbor for "something like" one hour and forty minutes during which he ordered the familiar two short beers but left half of the second one) to his farm home some three and one-quarter miles north of the city. It was still daylight, shortly after 5:00 P.M.

Following plaintiff's version of the accident, we read that she (alone in the Ford) drove east on Cleveland at "something around twenty, twenty-five miles an hour" until about the middle of the block west of the intersection of Ninth and Cleveland when she took her foot off the accelerator. Thereafter, she slackened speed

gradually and came to a complete stop "about even with the stop sign" controlling eastbound traffic which was located on the south side of Cleveland twenty feet west of the west curb of Ninth Street. Viewing plaintiff's testimony as a whole in the light most favorable to her, we agree with her counsel that it is fairly inferable that she stopped at a point where, in her position in the driver's seat, she was "about even with the stop sign." Having heretofore denied judicial knowledge of the *precise distance* from the front end of a *Chevrolet* automobile to the driver's seat [Fuzzell v. Williams, Mo.App., 288 S.W.2d 372, 377], we do not now profess such knowledge as to a *Ford* automobile. But, since we need not and should not pretend ignorance concerning matters of common knowledge [Elder v. Delcour, 364 Mo. 835, 838, 269 S.W.2d 17, 19(2), 47 A.L.R.2d 370, 372; ABC Liquidators, Inc. v. Kansas City, Mo., 322 S.W.2d 876, 884(10)], we may and do know judicially that it is several (certainly no less than six) feet from the front end of a Ford automobile, of the vintage driven by instant plaintiff, to the driver's seat. So, when plaintiff stopped, the front end of the Ford was less than fourteen feet from the west curb of Ninth Street.

■ As she stopped at the stop sign, plaintiff looked to her right, or toward the south, and then saw defendant's northbound Chevrolet on Ninth Street "about even with the front doors of the high school," and thus at a point subsequently found by actual measurement to have been one hundred thirty feet south of the south curb of Cleveland. According to plaintiff, "he (defendant) seemed to be going about thirty, thirty-five miles an hour, something like that." It may not be inappropriate to observe here

that this statement concerning the speed of defendant's automobile and, for that matter, many of plaintiff's statements pertaining to speeds or distances obviously were not positive declarations of fact but were so phrased and qualified that they clearly were intended to be, and indeed were, nothing more than inexact estimates with all of the frailties inherent in that character of statement. Cf. Davidson v. King, Mo.App., 309 S.W.2d 132, 135. *Defendant,* no doubt in better position to know or estimate his own speed, said that he was traveling north on Ninth Street at "something like twenty-five miles an hour." Since that estimate of defendant's speed was not inconsistent with plaintiff's theory of the case or any judicial admissions by her and was not contrary to physical fact, plaintiff is not hamstrung and hog-tied by her estimate of defendant's speed but, in our consideration of the issue as to her contributory negligence, is entitled to the benefit of defendant's estimate.[1] Whatever the precise speed of defendant's Chevrolet may have been when plaintiff saw it one hundred thirty feet south of the intersection, there was no objection when plaintiff was asked on direct examination, "was there anything about his (defendant's) speed, considering the distance that he was away, that alarmed you or led you to believe he wouldn't be able to stop," and likewise no motion to strike plaintiff's answer, "no, nothing whatsoever"; and, when counsel inquired on cross-examination whether defendant's speed raised "any alarm or concern as to whether or not he might stop at this intersection," plaintiff responded, "no, it didn't, because I knew that there was a four-way stop there, he was supposed to by law stop and he still had plenty of time to put on his brakes." In the circumstances reflected by the record, the quoted testimony was not without probative value.[2]

---

1. Bowman v. Ryan, Mo.App., 343 S.W.2d 613, 619(8); Montgomery v. Petrus, Mo. App., 307 S.W.2d 24, 27(3, 4). See also Morgan v. Thompson, Mo., 325 S.W.2d 794, 797; Williams v. Ricklemann, Mo., 292 S.W.2d 276, 280(2); Smith v. Siercks, Mo., 277 S.W.2d 521, 525(3).

2. Lomax v. Sawtell, Mo.App., 286 S.W.2d 40, 42(1); Cox v. Frank L. Schaab Stove & Furniture Co., Mo.App., 83 S.W.2d 211, 216(4); Ridenhour v. Oklahoma Contracting Co., Mo.App., 45 S.W.2d 108, 112(4). See also Steeley v. Kurn, 348 Mo. 1142, 157 S.W.2d 212, 213(4); Doyle

After observing defendant's automobile, plaintiff looked to her left or to the north and then straight ahead. Seeing no other person or vehicle, plaintiff "started up slow, just like you normally would" and proceeded into the intersection at an attained speed of "something around five, six, seven miles an hour, somewhere along in there." Plaintiff said that "at five or six miles an hour, (she) could stop * in seven or eight or ten feet." However, it is not clear whether this estimate included the distance traveled during the standard reaction time of three-fourths second (which, at six miles per hour, would have been 6.6 feet), and there was no estimate of stopping distance at seven miles per hour. No horn was sounded by defendant at any time; but, as plaintiff put it, "something told me to look— I don't know what" when "I was about the middle * * * of the intersection" (explained as meaning that, in her position in the driver's seat she was in the middle of Ninth Street). Then looking to her right or to the south a second time, she saw defendant's northbound Chevrolet with its front end about even with the south curbline of Cleveland and thus "something in the neighborhood of ten or twelve feet" from the right side of plaintiff's eastbound Ford. At that time, defendant was traveling "approximately the same speed" as when first observed by plaintiff one hundred thirty feet south of the intersection. He "couldn't possibly" have stopped at the stop sign controlling northbound traffic which was located on the east curb of Ninth Street eighteen feet south of the south curb of Cleveland. Plaintiff immediately attempted to accelerate speed and swerve to her left; but, within a split second, the front end of defendant's northbound Chevrolet struck the center of the right side of plaintiff's eastbound Ford. At the moment of impact, the front wheels of plaintiff's automobile were about even with the east curbline of Ninth Street and the right side of that vehicle was approximately twelve feet north of the south curbline of Cleveland. The right side of defendant's automobile was about five feet west of the east curbline of Ninth. That vehicle did not swerve in either direction prior to the crash.

■ Reduced to its simplest terms, the burden of defendant's appellate argument is that plaintiff was negligent as a matter of law because, having observed defendant's northbound Chevrolet as she (plaintiff) stopped "about even with the stop sign" west of the intersection, she thereafter entered the intersection and proceeded to the middle of Ninth Street before looking again to her right or to the south. In this connection, defendant's counsel emphasizes that the speed limit was twenty-five miles per hour, that plaintiff estimated defendant's speed at thirty to thirty-five miles per hour, and that, when asked whether she was "familiar with how many feet it would take to stop a 1956 Chevrolet automobile" traveling at that speed, she said, "no (sic) necessarily." But, as we have pointed out, plaintiff was (and is) entitled to the benefit of *defendant's* estimate of his speed, towit, twenty-five miles per hour, and to her own testimony (received without objection on direct examination and elicited by defendant's counsel on cross-examination) to the effect that the speed of defendant's automobile gave her no cause for alarm or concern as to defendant's ability to stop before reaching the intersection. We note also that the photographs in evidence show that defendant, northbound on Ninth Street, was traveling upgrade as he approached this intersection. Even as we may not know judicially *the precise distance* within which a certain automobile may be stopped under given conditions but may recognize *limits* within which a stop could be made [Nelms v. Bright, Mo. (banc), 299 S.W.2d 483, 490 (17)], it would seem that, although the triers of the facts properly could not have

ascribed, and we do not ascribe, to instant plaintiff knowledge of *the precise distance* within which defendant's northbound Chevrolet could have been stopped under the conditions prevailing when plaintiff observed it one hundred thirty feet south of the intersection, she properly might have been credited by the triers of the facts, and here may be credited, with the reasonable judgment of an average motorist as to *limits* within which that vehicle could have been stopped. Thus, although we do not, and instant plaintiff did not, know *the precise distance* within which defendant's northbound Chevrolet traveling at twenty-five miles per hour could have been stopped under the conditions then prevailing, we believe that we are permitted judicial knowledge that it might have been stopped in a considerably shorter distance than one hundred thirty feet [3] and that the triers of the facts reasonably might have inferred and found that, when plaintiff saw defendant's automobile one hundred thirty feet south of the intersection, she then had the right to assume that defendant could and would stop before entering the intersection, as it was his duty to do.[4]

Although we entertain no doubt but that the jurors properly might have found that plaintiff was not negligent in entering the intersection, we agree with defendant's counsel that this did not confer upon plaintiff an unrestricted license or absolute right to proceed through the intersection blindly and in utter disregard of motorists on the intersecting street [Pitts v. Garner, Mo., 321 S.W.2d 509, 518–519; Politte v. Miller, Mo.App., 301 S.W.2d 839, 842]; and, if and when the developing situation became such that plaintiff, in the exercise of the highest degree of care, should have become cognizant that defendant either could not or would not stop, plaintiff immediately would have been

---

3. Although we need not and do not profess such "knowledge" here, we note that, in Chawkley v. Wabash Ry. Co., 317 Mo. 782, 797, 297 S.W. 20, 24, our Supreme Court, en banc, thought it "a matter of common knowledge" that an automobile traveling 20 miles per hour could be stopped within 20 to 25 feet, and that the Kansas City Court of Appeals quoted the same stopping distances in Cross v. Wears, Mo.App., 67 S.W.2d 517, 518, and in Leavell v. Thompson, 238 Mo.App. 130, 137, 176 S.W.2d 854, 857(2). (But, see Cluck v. Abe, 328 Mo. 81, 88, 40 S.W. 2d 558, 561.) In Crane v. Sirkin & Needles Moving Co., Mo.App., 85 S.W. 2d 911, 914 (certiorari quashed State ex rel. Sirkin & Needles Moving Co. v. Hostetter, 340 Mo. 211, 101 S.W.2d 50, 53), the St. Louis Court of Appeals judicially knew that a moving van "traveling at a speed of 25 to 30 miles per hour * * * could have been stopped in a much less distance than that available as shown by the evidence," towit, in less than 130 to 140 feet; and, in Danklef v. Armbruster, Mo.App., 91 S.W.2d 660, 663(2), the same court judicially knew that a delivery truck, traveling 25 miles per hour, could have avoided a collision either by swerving or by stopping within the distance of 100 feet there available. The table in Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 9C, § 6237,

loc. cit. 413, to which our Supreme Court sometimes refers [e. g., Adkins v. Boss, Mo., 290 S.W.2d 139, 143; Cooksey v. Ace Cab Co., Mo., 289 S.W.2d 40, 44; Christian v. Jeter, Mo., 287 S.W.2d 768, 771(6)], shows stopping distances (including distances traveled during reaction time) of 40 feet for an automobile traveling 20 miles per hour and of 73 feet for 30 miles per hour. The conservative Missouri Drivers Guide widely distributed by our State Highway Patrol [see Breshears v. Myers, Mo., 266 S.W. 2d 638, 641, where a patrolman testified from experience that actual stopping distances were less than those in the guide] shows stopping distances (including distances traveled during reaction time) of 43 feet for an automobile traveling 20 miles per hour and of 79 feet for 30 miles per hour. And, in Appelhans v. Goldman, Mo., 349 S.W.2d 204, 207, there was no objection to the testimony of a "drivers education" teacher that "the total stopping distance for a car traveling 30 m. p. h. was 78.4 feet and for a car traveling 25 m. p. h. was 60.2 feet."

4. Pitts v. Garner, Mo., 321 S.W.2d 509, 518; Findley v. Asher, Mo., 334 S.W.2d 70, 73; Stone v. Reed, Mo.App., 247 S.W. 2d 325, 329; Lord v. Austin, Mo.App., 39 S.W.2d 575, 577(5); 60 C.J.S., *Motor Vehicles*, § 361, loc. cit. 863.

charged with the legal obligation to take evasive action. Myers v. Karchmer, Mo., 313 S.W.2d 697, 704(8); Stone v. Reed, Mo.App., 247 S.W.2d 325, 329(2). But, plaintiff's duty as she proceeded into the intersection was to exercise the highest degree of care commensurate with the circumstances, one of which was the stop sign directed to northbound vehicles on Ninth Street [Witt v. Peterson, Mo., 310 S.W.2d 857, 860; Collier v. St. Louis Public Service Co., Mo.App., 298 S.W.2d 455, 460]; and, if plaintiff stopped before entering the intersection, carefully looked ahead and laterally, and then saw no vehicles whose approach reasonably appeared to present any danger, her continuing duty to maintain a careful and vigilant lookout ahead and laterally ahead [Pitts v. Garner, supra, 321 S.W.2d loc. cit. 519(13)] should not be construed as requiring a constant swinging of her head from side to side or an uninterrupted watch toward the south [Schmittzehe v. City of Cape Garardeau, Mo., 327 S.W.2d 918, 923(5); 60 C.J.S., Motor Vehicles, § 287, p. 672] and may not be transmogrified into a mandatory obligation to accomplish the impossible by keeping a continuous lookout in all directions at the same time. O'Bryant v. Black and White Cab Co., Mo.App., 350 S.W.2d 833, 837–838(5); Burke v. Renick, Mo.App., 249 S.W.2d 513, 516; Albert H. Hoppe, Inc. v. St. Louis Public Service Co., Mo.App., 227 S.W.2d 499, 502(7), affirmed on this point 361 Mo. 402, 403, 235 S.W.2d 347, 348(1), 23 A.L.R. 2d 846.

▆▆▆ If plaintiff had looked to her right or to the south *continuously* (though that was not her legal duty), no doubt impending

danger would have become reasonably apparent at *some* point and time before she (in her position in the driver's seat) had reached the center of Ninth Street and the front end of defendant's northbound Chevrolet had reached the south curbline of Cleveland. But, it by no means follows that we should declare plaintiff contributorily negligent *as a matter of law.* For, there was no evidence in plaintiff's case (or, for that matter, in the entire record) which would permit us to find *with any substantial measure of accuracy and assurance* (a) the position of either vehicle when such impending danger reasonably might have become apparent to plaintiff or (b) that plaintiff thereafter could have avoided the collision. Cf. Hunt v. Babb, Mo.App., 340 S.W.2d 177, 180. "The rule as to the quantum of contributory negligence which is sufficient to prevent recovery is that it must be such as to enter into and form the direct, producing, and efficient cause of the casualty, and absent which the casualty would not have happened";[5] and numerous Missouri cases arising out of intersectional collisions have recognized that the failure of a plaintiff driver to maintain a more vigilant lookout and to make earlier discovery of impending danger does not justify a directed verdict for defendant unless it may be found and declared, *as a matter of law,* that plaintiff's failure to make such earlier discovery was a proximate cause of the collision in that plaintiff thereafter could have averted the collision.[6]

At the moment of impact, the front wheels of plaintiff's eastbound Ford were about even with the east curbline of Ninth Street, and thus the front bumper of that vehicle was a foot or so beyond and outside

5. Howard v. Scarritt Estate Co., 267 Mo. 398, 402, 184 S.W. 1144, 1145; Albert H. Hoppe, Inc. v. St. Louis Public Service Co., Mo.App., 227 S.W.2d 499, 502(4), affirmed on this point 361 Mo. 402, 403, 235 S.W.2d 347, 348(1), 23 A.L.R.2d 846; Meredith v. Terminal R. R. Ass'n of St. Louis, Mo.App., 257 S.W.2d 221, 226(13); Fuzzell v. Williams, Mo.App., 288 S.W.2d 372, 377(14); Fann v. Farmer, Mo.App., 289 S.W.2d 144, 149(10).

6. Schmittzehe v. City of Cape Girardeau, Mo., 327 S.W.2d 918, 923–924; Cooksey v. Ace Cab Co., supra, 289 S.W.2d loc. cit. 44(4); Stonefield v. Flynn, Mo.App., 347 S.W.2d 472, 476–477; Hunt v. Babb, Mo.App., 340 S.W.2d 177, 180; Albert H. Hoppe, Inc. v. St. Louis Public Service Co., supra, 227 S.W.2d loc. cit. 502–503.

the east line of the intersection. The left side of defendant's northbound Chevrolet was then about eleven feet west of the east curbline (and about nineteen feet east of the west curbline) of Ninth Street. Assuming that plaintiff's estimate of her stopping distance included reaction time and accepting (for the purposes of this discussion) her estimate of ten feet, it is apparent that, to have stopped short of the path of defendant's northbound Chevrolet, it would have been necessary for plaintiff to have become cognizant of impending danger, i. e., that defendant either could not or would not stop or yield the right of way to her, when the front end of her eastbound Ford was about twenty-two feet west of the point where it was at the moment of impact (and about nine feet east of the west line of the intersection). Likewise using plaintiff's speed estimate of six miles per hour for her automobile, 2.5 seconds elapsed while she traveled those twenty-two feet. During the same 2.5 seconds, defendant's northbound automobile (at twenty-five miles per hour) traveled approximately ninety-two feet. So (on these estimates), when the front end of plaintiff's eastbound automobile passed the point where it would have been possible for her to have initiated *effective* evasive action, the front end of defendant's northbound automobile would have been some eighty feet south of the south line of the intersection (for, at the moment of impact, the front end of that vehicle was about twelve feet into the intersection). Whether, with the front end of plaintiff's eastbound Ford already nine feet into the intersection and the front end of defendant's northbound Chevrolet still eighty feet south of the intersection, plaintiff should have been charged with such notice of impending danger as to impose an immediate duty to take evasive action would, in our view of the situation, have been for the triers of the facts; and,

whether plaintiff's failure to look to the south *after* the front end of her automobile was more than nine feet into the intersection was a proximate cause of the collision likewise would have been for the jurors.

We hasten to add that we do not rest our holding upon so insubstantial a foundation as the foregoing computation. In fact, we do not commend the use, or recognize the reliability, of such computations, which tend to create superficially impressive, but ofttimes cruelly deceptive, mathematical mirages having no more substance than the elements out of which they are conjured, namely, estimates almost always incapable of precise acertainment or confirmation and too often spawned in avarice or expediency. Recognizing also that motorists do not carry (and, if they did, could not utilize) stop watches to clock elapsed times and slide rules to make lightning calculations, we nevertheless have indulged the temptation to follow our erudite and esteemed brethren of the bench into these nebulous fields [e. g., Schmittzehe v. City of Cape Girardeau, supra, 327 S.W.2d loc. cit. 923; Stonefield v. Flynn, Mo.App., 347 S.W.2d 472, 476-477] simply to illustrate permissible inferences which *might* be drawn from the record before us. Under the injunction that the issue of plaintiff's contributory negligence was for the jury unless, from all of the evidence and the inferences fairly deducible therefrom, when viewed in the light most favorable to plaintiff, the only reasonable conclusion was that plaintiff was guilty of negligence proximately causing her injury [Kickham v. Carter, Mo., 314 S.W.2d 902, 908(8); Pender v. Foeste, Mo., 329 S.W.2d 656, 659(3); Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14, 19(1)], we are impelled to conclude that the trial court did not err in refusing to declare plaintiff contributorily negligent as a matter of law.[7]

7. Although all are factually distinguishable, the following cases afford, we think, adequate support for our holding: Dye v. Geier, Mo., 345 S.W.2d 83, 87-88(3, 4); Schmittzehe v. City of Cape Girardeau, supra, 327 S.W.2d loc. cit. 922-924(2-5); Stewart v. Boring, Mo., 312 S.W.2d 131, 133; Moore v. Southwestern Bell Tel. Co., Mo., 301 S.W.2d 817; Cooksey v. Ace Cab Co., supra; O'Bryant v.

Able counsel for defendant has, in painstaking and methodical fashion, pointed out distinguishing factual aspects of several cases cited in plaintiff's brief (and in this opinion), but there are equally-important distinctions between the instant action and those cited in defendant's brief.[8] No two cases are poured in the same factual mold and, in the final analysis, the issue of plaintiff's contributory negligence vel non must, in each instance, be ruled upon the particular facts and circumstances there presented.[9] See the pertinent comment in Car-

penter v. Kessner, Mo.App., 330 S.W.2d 270, 273. Believing that no useful purpose would be served by tedious factual review of defendant's cited cases, suffice it to say that each has been considered carefully and none, in our opinion, militates against the conclusion here announced.

The judgment is affirmed.

RUARK, P. J., concurs.

McDOWELL, J., concurs.

Black and White Cab Co., Mo.App., 350 S.W.2d 833; Stonefield v. Flynn, supra, 347 S.W.2d loc. cit. 476–477(3, 4) ; Hunt v. Babb, supra; Montgomery v. Petrus, supra; Collier v. St. Louis Public Service Co., Mo.App., 298 S.W.2d 455; Burke v. Renick, Mo.App., 249 S.W.2d 513; Stone v. Reed, supra; Rayburn v. Fricke, Mo.App., 243 S.W.2d 768; Albert H. Hoppe, Inc. v. St. Louis Public Service Co., supra; Ritzheimer v. Marshall, Mo. App., 168 S.W.2d 159.

8. Downing v. Dixon, Mo., 313 S.W.2d 644; Witt v. Peterson, Mo., 310 S.W.2d 857; Pennington v. Carper, Mo., 309 S.W.2d

596; Burton v. Moulder, Mo., 245 S.W. 2d 844; Frandeka v. St. Louis Public Service Co., Mo., 234 S.W.2d 540; Yeaman v. Storms, 358 Mo. 774, 217 S.W. 2d 495; Major v. Davenport, Mo.App., 306 S.W.2d 626; Folluo v. Gray, Mo. App., 256 S.W.2d 273.

9. Harding v. Peterson, Mo.App., 227 S.W. 2d 88, 90(1); McFetridge v. Kurn, Mo. App., 125 S.W.2d 912, 919(11); Sisk v. Chicago, B. & Q. R. Co., Mo.App., 67 S. W.2d 830, 836(12); Scanlan v. Kansas City, 223 Mo.App. 1203, 19 S.W.2d 522, 524(2).