Marsha Maria MAY, a minor, by Lawrence H. May, her Next Friend, and Lawrence H. May and Roselyn J. May, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Paula JONES, a minor, by Mary Jones, her next friend, and William D. Jones and Mary Jones, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Duane WAGGONER, a minor, by Carrie Waggoner, his Next Friend and Clarence Waggoner and Carrie Waggoner, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Nos. 67 C 254(1), 67 C 389(1), 67 C 390(1).

United States District Court
E. D. Missouri, E. D.
Oct. 29, 1968.

Deeba, DeStefano, Sauter & Herd, St. Louis, Mo., for plaintiff, Marsha Maria May, a minor, by Lawrence H. May, her next friend, and others.

Jim J. Shoemake, Asst. U. S. Atty., Veryl L. Riddle, U. S. Atty., St. Louis, Mo., for defendant.

Douglas W. O'Neill, St. Louis, Mo., for plaintiff, Paula Jones, a minor, by Mary Jones, her next friend, and others.

Douglas W. O'Neill, St. Louis, Mo., for plaintiff, Duane Waggoner, a minor, by Carrie Waggoner, his next friend, and others.

## MEMORANDUM OPINION

HARPER, Chief Judge.

This consolidated action was tried before the court only as against the defendant, United States of America, under the provisions of the Federal Tort Claim Act, 28 U.S.C. § 1346(b). The other named defendant, James L. Meeks, admitted liability prior to the impanelling of a jury, and after the jury was qualified that portion of the case was passed for settlement, and the court was advised of the amount to be paid to each plaintiff. The case was subsequently dismissed at the request of the plaintiffs.

The pleadings and the testimony reveal that the minor plaintiffs were passengers in a 1960 Plymouth automobile driven by the defendant, James L. Meeks. Meeks, who was accompanied by Waggoner, had picked up the two girls on their way home from school and was proceeding south on Minnesota Street. James Andrew Digar was driving a United States Post Office mail truck west on Mott Street. These vehicles collided at the intersection of those two streets. Since this accident occurred in the State

of Missouri, under the Tort Claim Act the law of that state is applicable.

The accident occurred on October 12, 1966, at about 4:10 p. m. Minnesota Street runs north and south and is approximately 30 feet in width. No evidence indicates the width of Mott Street at this intersection, but from the photographs it would appear it is slightly more narrow. Mott Street runs east and west. This is a residential area of the city where trees line the streets and cars park on both sides of the street. There are no traffic guidance signs nor signals at the intersection of Mott and Minnesota. On the day in question, it was still daylight and the streets were dry.

The credible testimony reveals that Meeks was driving south on Minnesota in a reckless manner at a speed of 50 to 55 miles per hour. Although he had a clear view of the intersection and knew that it was unmarked, he failed to look at the intersection at all until an instant before the collision.

Digar, on the other hand, was unfamiliar with the intersection. He was proceeding west on Mott Street. As Mott approaches this intersection there is a rather steep hill cresting at about the center of the intersection. Digar came up the hill. At a point about parallel with the curb line he came to an "almost stop" or a "hesitation stop". At this time he looked to the right and saw no vehicles approaching; he then looked to the left, and seeing no automobiles, put his foot to the gas pedal and proceeded into the intersection. As he was bringing his head back around he saw some motion to his right and hit his brakes. The mail truck he was driving was immediately struck by the Meeks' auto. The left rear of the Meeks' car' struck the right front side and fender of the mail truck. At the time of the collision the front of the mail truck was approximately in the center of the intersection.

The witness, Patricia Brown, was located in the left-hand passenger seat of her neighbor's car which was parked on the right-hand side of Minnesota Street, some 162 feet from the north side of the intersection. She had a clear view of the entire incident. At the time that the mail truck was just entering the intersection she saw the nose of the truck, and the Meeks' car at that time was just abreast of the car in which she was located. Meeks never varied his speed, but immediately before the collision he swerved slightly to the right.

The witness, Janet Viorol, had just pulled up and parked three houses south of the intersection on Minnesota. She was facing the intersection and saw the accident. When the Meeks' car entered the intersection the mail truck was in the center of the intersection.

■ The plaintiffs' contention is that the driver Digar was negligent in failing to keep a careful lookout as required by the law of Missouri. This alleged negligence is said to have contributed to the admittedly serious injuries suffered by the plaintiffs and, therefore, the defendant, United States, is a joint tort feasor. The United States contends in response that its driver was not negligent. Each party has furnished the court with many cases, some illuminating and some not. The court has carefully reviewed each of these cases, and others, and is of the opinion that the driver for the defendant, United States, was not negligent in the operation of his mail truck. Rather, in the opinion of this court, this accident was entirely the result of the reckless driving of the defendant Meeks.

■ It is perfectly clear under the existing Missouri law that a motorist must always exercise the highest degree of care as required by Section 304.010 RSMo 1959, V.A.M.S. The mere fact that one is the first to reach an intersection, thereby acquiring the right of way, does not give that person an unrestricted license to abandon caution and proceed. See Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, 582 (1955). The defendant's driver must exercise the highest degree of care commensurate with the circumstances. Jones v. Fritz, 353 S.W.2d 393, 398 (Spr.Mo.App.1962); Witt v. Peter-

son, 310 S.W.2d 857, 860 (Mo.1958); and O'Bryant v. Black & White Cab, 350 S. W.2d 833, 837 (K.C.Mo.App.1961). As stated by the Missouri Supreme Court in the *Witt* case, one has the duty to maintain a careful and vigilant lookout and to see what a person exercising the highest degree of care under the circumstances would see. Such a person will be held to have seen what could have been seen. See also, Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73 and Weis v. Melvin, Mo., 219 S.W.2d 310.

In this instance the plaintiffs wish to classify this case as an "obstructed view" case so that the law as stated in Douglas v. Whitledge, 302 S.W.2d 294, 299 (Spr. Mo.App.1957) would be strictly applicable. The United States on the other hand places this case in the category of the "second look" cases, such as Combellick v. Rooks, 401 S.W.2d 460 (Mo.1966).

The evidence reveals that at the time that Digar was slightly into the intersection, barely beyond the curb line, the Meeks' car was at least 162 feet away. Digar looked to his right. He testified that he saw no vehicles approaching, but he further testified that his view was somewhat obstructed. He could not recall the nature of the obstruction. From the plaintiffs' exhibits, particularly 6 and 7, it appears that Digar's line of vision was only partially obscured. He clearly could see at least 60 to 100 feet north on Minnesota. In Burke v. Renick, 249 S.W.2d 513 (St.L.Mo.App.1952), that court ruled that in a situation in which a motorist looked to his left at a point some 15 feet from an intersection and saw no traffic within 60 feet, he had a right to proceed on the assumption that there was no danger from the left and that he did not have to anticipate the approach of a vehicle from that direction at an excessive rate of speed. See also O'Bryant v. Black & White Cab Co., supra, 350 S.W.2d at 837; Combellick v. Rooks, supra, 401 S.W.2d at 462.

This is not the situation covered in Douglas v. Whitledge, supra, in which the driver could not see traffic approaching from his right. Here Digar could see to his right. Plaintiff has not provided this court with convincing evidence from which it can say with sufficient certainty that Digar's look was negligent or that his failure to look again (if he did so fail) was negligent. The court notes that Digar was proceeding slowly into the intersection after looking right and then left, at a time when Meeks was 162 feet from the intersection.

■ It cannot be said that the defendant's driver was negligent in failing to look north again in the time span of two to three seconds. He did have an obligation to look also ahead and laterally ahead and to observe the oncoming traffic, if any, and possible danger from the curbs, if any. See Jones v. Fritz, supra, 353 S.W.2d at 397 and 398, and cases cited therein. Thus, while Digar traveled from the curb line to a point near the center of the intersection and just into the south traffic lane of Minnesota, Meeks traveled 162 feet and reached that same point and struck Digar. Digar had seen movement from the right and applied his brakes in order to avoid collision. Unfortunately, he could not do so. In the opinion of the court, the driver of the defendant, United States of America, was not negligent under the circumstances present in this case. The plaintiffs have failed to carry their burden of proof. Digar was not under a duty to swing his head from side to side. He could see a safe distance north on Minnesota when he entered the intersection, and so looking could not see the approaching Meeks' vehicle. Thus he had a right to proceed into the intersection and could properly assume that an approaching car would properly yield the right of way. See Burke v. Renick, supra; O'Bryant v. Black & White Cab Co., supra, 350 S.W.2d at 837; and Combellick v. Rooks, supra, 401 S.W.2d at 463. Had he seen the Meeks' car, which was 162 feet away when he started into the intersection, he was under no duty to stop.

This memorandum opinion is adopted by the court as its findings of fact and

conclusions of law and the clerk will prepare and enter the proper order finding for the defendant, United States of America, in each of the three cases.