227 S.W.2d 85 (1950)
STONE
v.
KIES.
No. 21319.
Kansas City Court of Appeals. Missouri.
February 6, 1950.
*86 C. C. Ross, Bethany, for appellant.
W. V. Mayse, Bethany, for respondent.
SPERRY, Commissioner.
Sam Kies sued Tom Stone in equity, alleging that he contracted to buy, and paid $1,400 for, a new A.C. Corn Picker; that Stone delivered a used picker. He prayed for specific performance of the contract alleged. Some two months after trial and submission of the cause, but before judgment plaintiff, with leave, filed a second amended petition, in the second count of which he alleged the payment to Stone of $1,400, by mistake, and the delivery to him by Stone of an A.C. Corn Picker; that said sale and delivery was by mutual mistake; that he had tendered back the picker when he discovered said mistake; and he prayed for return of the $1,400 and offered to return the corn picker. Judgment was for plaintiff on that count, as prayed, and defendant appealed.
Plaintiff's testimony was to the effect that one Bob Stone, an implement dealer at Chariton, Iowa, some 100 miles from plaintiff's home in Harrison County, Missouri, advertised a new two row A.C. Corn Picker for sale; that he telephoned Bob Stone and agreed to purchase the picker for the sum of $1,400; that on October 14, 1948, he sent a trucker, one Shoemaker, to Chariton with instructions to bring back the picker; that he delivered to Shoemaker two checks, totaling $1,400 in amount, to be used in paying for the picker; that one of said checks was drawn by a Commission Company payable to plaintiff, and indorsed in blank by him; that the other check was drawn and signed by plaintiff, with the amount payable filled in but with the name of the payee left blank; that a day or two later he learned that Shoemaker had brought back a used A.C. Picker; that he learned that the picker which he had received came from Tom Stone, an implement dealer of Chariton, Iowa, instead of Bob Stone; that he telephoned Tom Stone and told him that, whereas he had purchased a new picker, the picker delivered to him was a used one; that defendant *87 stated that if he had not received the picker he purchased he would see that he did receive it; that thereafter he tried to contact defendant by telephone but could not do so; that a Mr. Langfitt, a mutual business friend of the parties hereto, telephoned defendant, suggesting that defendant adjust his differences with plaintiff, and that defendant told Langfitt that it was none of his business; that on October 20, 1948, plaintiff telegraphed defendant as follows: "Received the used A.C. Corn Picker am holding it until a new one is delivered. Will pay the fourteen hundred dollars for it." He stated that new A.C. Corn Pickers for sale were difficult to find at that time.
Shoemaker's testimony was to the effect that he drove his truck to Chariton, Iowa, intending to procure a two row A.C. Corn Picker from Bob Stone Implement Company; that he drove into "Stone's Implement Company," located on the highway leading to Chariton (defendant's place of business), and asked if that was Bob Stone's Implement Company; that he was informed that it was Tom Stone's place; that he saw a sign across the road, stating that Bob Stone's was further down the road; that he stated to the man in charge that he was to procure a two row A.C. Corn Picker for Sam Kies; that he was asked if Kies had looked at a picker there the day before; that he stated that he did not know; that he asked if there were two such places of business and was told that there were more than two; that he still did not know whether he was at the right place; that Mr. Finton, who was in charge of the place, pointed out a picker and said that that was it; that he assisted defendant's employees in loading the picker, delivered the checks, and transported the machine to a shop at Bethany where it was to be assembled.
Tom Stone testified that he was not at the place of business when the picker was sold and delivered to Shoemaker, and learned of it afterward; that he maintained a large stock of implements and had several employees; that he sent Mr. Kies' check to the Bethany Bank and got the cash on it the next morning after this transaction took place; that there is no connection between his business and that of Bob Stone.
Mr. Finton stated that, the day before this picker was delivered to Shoemaker, two men had been in and looked at a used two row A.C. Picker, the only machine of that make in stock; that they said that if they decided to take it they would send a truck after it; that Shoemaker drove in and said he came after an A.C. Picker that Kies had bought; that he asked him if he had a check, and the amount; that Shoemaker showed him the checks, whereupon witness said: "That's the picker out there * * *." He stated that it was the only picker of that kind on the lot and that any one could see that it had been slightly used; that the driver and defendant's employees loaded the picker.
This suit was instituted on November 3, 1948. It was tried and submitted on February 15, 1949. The second amended petition, upon the second count of which judgment was had, was filed on April 18, 1949, pursuant to notice served on defendant on April 5, 1949. Judgment, rendered on April 19, was that plaintiff should deliver the picker to the sheriff of Harrison County for the use and benefit of defendant; and that defendant should pay to plaintiff the sum of $1,400 before taking possession of the picker.
Defendant contends that the court erred in permitting plaintiff to file his second amended petition, wherein a cause of action based upon an entirely new theory, materially different from that originally pleaded and tried, was set up. Since the effective date of the new Civil Code, Mo. R.S.A. § 847.1 et seq., amendments are unlimited in scope and, with leave, may be filed at any time before final judgment, if justice so requires. White v. Sievers, Mo.Sup., 221 S.W.2d 118, 122.
Defendant contends that plaintiff wholly failed to make out a case on the first count of the petition entitling him to a decree for specific performance of the contract alleged. His contention in that regard must be sustained. There was not a scintilla of evidence tending to prove that *88 defendant ever contracted or agreed to sell to plaintiff a new two row A.C. Corn Picker, as alleged in that count of the petition. The evidence was to the effect that defendant did not know about the transaction until after it was had; that plaintiff's agent saw the picker and helped to load it; that it was a used picker and that any one could see that it was; and that it was the only A.C. picker on the lot. Specific performance of an alleged contract cannot be decreed as against one who, according to all of the evidence, was not a party to the contract. We deem it unnecessary to cite authorities.
Defendant next urges that plaintiff may not have a rescission at this time, for two reasons: (a) because he did not rescind within a reasonable time after learning of the grounds therefor; and, (b) that plaintiff neither pleaded nor proved that he had offered to restore defendant's status quo, prior to trial.
Defendant's contention must be sustained on both grounds. This court, in World Publishing Co. v. Hull, 81 Mo.App. 277, 280, held that one who seeks to rescind a sale contract must do so within a reasonable time after discovery of the grounds for rescission; and in instances where the delay is for such a period as to be unquestionably without cause the court may so declare as a matter of law. Plaintiff discovered the mistake, upon which he bases his claimed right to rescind, on October 15th or 16th. The record is barren of any offer to return the property received, or of demanding a return of the purchase money, until the filing of the second amended petition, in April of 1949, some six months after discovery of the mistake. Then, for the first time, rescission was sought. No explanation is offered, or good cause shown, justifying such delay.
Furthermore, there is no evidence whatever tending to prove that plaintiff, at any time, tendered return of the picker in as good condition as it was in when he received it. Before a court of equity can grant him the equitable relief prayed for he must have tendered return of the picker, in as good condition as when he received it. (Exceptions to this rule are not material here.) Riss & Co. v. Wallace, Mo.App., 195 S.W.2d 881, 886; Fowler v. Golden, Mo.App., 212 S.W.2d 93, 94; 17 C.J.S., Contracts, § 437, p. 919. While defendant contends that plaintiff used the picker during the 1948 season, there is no evidence to that effect; but the duty is not on defendant, in a rescission case, to prove that the property was not in as good condition when tendered as it was in when received. Plaintiff is required to make proof of its condition, as a prerequisite to his right of rescission.
The judgment should be reversed.
BOUR, C., concurs.
PER CURIAM.
The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed.
All concur.