Myron O. BURTON, Plaintiff-Respondent,

v.

Henry R. AUFFENBERG, Francis H. Auffenberg, James A. Auffenberg, Robert J. Auffenberg, and Joseph C. Schultz, d/b/a Nash Missouri, Defendants-Appellants.

No. 30981.

St. Louis Court of Appeals.

Missouri.

May 15, 1962.

Hinkel & Carey, Harold D. Carey, Clifford L. Goetz, St. Louis, for defendants-appellants.

Frank Mashak, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

By this action, growing out of the sale of a new automobile, plaintiff sought to recover actual damages of $1,817.94, together with interest on said sum and punitive damages of $10,000. The verdict and judgment below was for plaintiff for actual damages of $1,200, interest of $360, and punitive damages of $750, or a total of $2,310. Defendant prosecutes this appeal.

Plaintiff's evidence tended to show that in 1955, and for at least part of 1956, the defendants, doing business under the registered fictitious name of Nash Missouri, operated an agency in St. Louis for the sale of Nash and Metropolitan automobiles. In the early part of March 1956, plaintiff inspected a car in defendants' showroom, which the defendants represented to him as being a new 1956 Nash Metropolitan automobile. Plaintiff was not familiar with the year models of that make of car. Relying on the representations of defendants, plaintiff purchased the automobile for the time price of $1,817.94, paying $300 in cash and executing a note and chattel mortgage for the difference. The note and mortgage was shortly thereafter acquired by the Mutual Bank and Trust Company, of St. Louis.

Plaintiff took delivery of the car on March 15, 1956. Five days later he received from defendants, through the mail, an application for a Missouri certificate of title, made out on the form furnished by the State Motor Vehicle Registration Office of the Department of Revenue. The application was accompanied by a letter from defendants telling plaintiff to take "* * * these papers to the License Bureau in order to get title in your name." In this application, marked plaintiff's Exhibit 10, the automobile was described as a 1956 *Nash*, Serial No. E9616, Engine No. 1G989466, having four cylinders and 10.63 horsepower. On the reverse side of the application was a form for the dealer or vendor to show the source of ownership, which the defendants completed and acknowledged before a notary public. Plaintiff took this application to the Motor Vehicle Registration Office in St. Louis, but was unable to obtain a certificate of title or a license for the car. Defendants' objection as to the reason given plaintiff by the Motor Vehicle Registration Office was sustained.

Whether before or after he received the first application form is not clear from the evidence, but about March 25, 1956, plaintiff received from the Mutual Bank a duplicate original copy of what is titled as a bill of sale for the car, but which in fact is a memorandum of the sale. He noted that in addition to his own signature it

bore another purporting to be that of his wife, Ruth Burton, from whom he was separated at the time, and who had not signed the instrument. Plaintiff conferred with Charles Luetkemeyer of the Mutual Bank, and also with John M. Garlich, General Manager of the defendants' business. He told Garlich that he wanted nothing to do with the deal, and Garlich told him he would have to contact the bank, because his note and papers were there. Later plaintiff was given a second bill of sale, dated May 15, 1956, signed by plaintiff and Garlich. Still later, on June 6, 1956, the original note and chattel mortgage was cancelled by the Mutual Bank and returned to plaintiff, and in lieu thereof plaintiff executed a new note and mortgage for the balance then remaining due. When they were returned to him plaintiff found that the original note and chattel mortgage, like the first bill of sale, bore the purported signature of Ruth Burton. Mrs. Burton, who was reunited with plaintiff in 1957, appeared as a witness and testified that she had not signed either the first bill of sale or the first note and chattel mortgage.

Plaintiff testified that between March and August, 1956, he contacted defendants at least once a month regarding his inability to obtain a certificate of title and license for the automobile, and each time was assured that the matter would be straightened out. About August 27, 1956, or a few days later, plaintiff finally received from defendants, through the mail, a second application form, prepared by them, identified as plaintiff's Exhibit 18. In this application the car was described as a 1956 Nash, Serial No. E9616, Engine No. 16989466 having 6 cylinders and 23.44 horsepower. Plaintiff took this application to the Motor Registration Office and was again unable to obtain a certificate of title or a license. An objection to the reason given him was likewise sustained. Again he returned to the defendants, about September 1, informed them he had been unable to obtain a title or license " * * * on account of the application being wrong" as

to " * * * the horsepower and the number of the cylinders on the car * *." Plaintiff testified that he pointed out to defendants that on the first application the number of cylinders was stated to be 4 and the horsepower 10.63, while on the second application defendants had inserted in the form that the car had 6 cylinders and horsepower of 23.44. Defendants again promised him, plaintiff said, that they would take care of the matter.

Thereafter, around November 1, 1956, plaintiff received from defendants a third completed application, which was marked plaintiff's Exhibit 19. Therein the automobile was described as a "1956 Nash-Metro," Serial No. E9616, Engine No. 1698466, having 4 cylinders and 13.22 horsepower. Plaintiff presented this application to the Motor Vehicle Registration Office and was again refused a certificate of title and a license. Thereupon he went to the defendants, threw down the keys to the car, offered to return the car, which was outside on the street, and told them that he didn't want anything to do with the deal. Plaintiff testified that defendants threw the keys back and said that plaintiff would have to see the bank, and that plaintiff was responsible on the mortgage. A short period later, plaintiff, having neither a title or license, put the car in storage, where it has remained.

Plaintiff's evidence further tended to show that the automobile which defendants had represented to him as being a 1956 Nash Metropolitan was in fact a 1954 Metropolitan. And Carl Rundquist, Administrative Assistant to the Director of the Motor Vehicle Office in St. Louis, and Anita M. Garson, in charge of the trouble file desk in that office, who handled problems arising from applications for titles, testified that if the applications and bill of sale had been presented to them to obtain a certificate of title and license for plaintiff's automobile they would not have accepted them because of the erroneous descriptions of the car as set forth in the applications.

Defendants' own evidence tended to show that the make of automobile known as the Metropolitan was a different car than that named the Nash, and that the former was manufactured, or at least assembled, in England, while the latter was built in this country. Defendants' evidence further was to the effect that the distributor for the Metropolitan in St. Louis zone was American Motor Sales Corporation; that acting on orders from its home office in Detroit, on December 8, 1955, the St. Louis Office of American Motors notified all of its dealers, including defendants, that on and after December 15, 1955, all Metropolitans sold should be registered with the State License Bureaus as 1956 models; and that the automobile which defendants sold to plaintiff was bought by defendants from American Motors on February 24, 1956. Defendants offered no evidence to explain the variations in the make, number of cylinders, and the horsepower, which appeared on the three applications they prepared for and furnished to plaintiff; nor did they offer any evidence to contradict the testimony of Mrs. Burton as to the falsity of the signature purporting to be hers which appears on the original bill of sale and on the first note and chattel mortgage.

A difference of opinion appears to exist as to the nature of plaintiff's cause of action. Defendants regard it as one by a defrauded purchaser, who, upon discovering the falsity of the representation, attempts to repudiate the sale, tenders the return of the property, and sues to recover the purchase price paid, as in Schroeder v. Zykan, Mo.App., 255 S.W.2d 105. Plaintiff describes his action as one for fraud and deceit, but as we understand his brief, his claim is that the alleged fraud perpetrated by defendants consisted of obtaining plaintiff's money and failing or refusing " * * * to make an affidavit as to the pertinent information to enable plaintiff to obtain a title and license to the automobile he bought. * * *" McClellan v. Sam Schwartz Pontiac, Inc., Mo.,

338 S.W.2d 49 is cited in support of plaintiff's position.

A dispute of this nature must be determined by the facts pleaded in plaintiff's petition, and the relief sought. Kemp v. Woods, 363 Mo. 427, 251 S.W.2d 684; Lebcowitz v. Simms, Mo.App., 300 S.W.2d 827. An examination of plaintiff's petition discloses that except for the allegation as to constructive knowledge, plaintiff pleaded every element essential to state a claim based on a false representation. Powers v. Shore, Mo., 248 S.W.2d 1; Nash v. Normandy State Bank, Mo., 201 S.W.2d 299; Salmon v. Brookshire, Mo.App., 301 S.W.2d 48. There is no allegation that defendants defrauded plaintiff by obtaining his money and wrongfully failing to execute and deliver a proper bill of sale to him, as in McClellan v. Sam Schwartz Pontiac, Inc., supra. We agree with defendants that the claim pleaded in plaintiff's petition was based on the defendants' alleged misrepresentation as to the year model of the car.

However, because of the points raised by defendants on appeal, it is immaterial whether the fraud was that of misrepresentation or that of wrongfully failing to give plaintiff a proper bill of sale. Defendants' initial complaint is that Instruction No. 1, plaintiff's combination verdict-directing and damage instruction, was prejudicially erroneous. The instruction is lengthy, covering three typewritten pages of the transcript, and no useful purpose would be served by quoting it in full. It seems to have been predicated on both the misrepresentation of defendants as to the year model *and* the defendants' representation that they would furnish plaintiff with proper application papers and their failure to do so. It is sufficient for the point raised to say that after referring to plaintiff's inability to obtain a title and license with the applications furnished by defendants the instruction continues:

"* * * and if you further find that plaintiff thereafter on several occasions brought said matter to the attention of the agents and servants in charge of and at defendants place of business, as aforesaid, if so; and that he requested them to cancel the sale and papers he was required to sign by them, if so, and they refused to do so or refund his money, if so; and if you further find that sometime in November 1956, plaintiff was still unable to obtain a Missouri certificate of title or license plates to the automobile he bought from defendants by reason of their failure to provide him with the correct applications for title and license, if so; and that he did then attempt to return the said automobile at their place of business and cancel the whole deal, if so, but that defendants, by and through their agents and servants refused to do so, if you so find; * * *."

■ Defendants assert, among other grounds of criticism, that the instruction was deficient in that it did not require the jury to find: (1) that the plaintiff had repudiated the transaction in a timely manner; and (2), that when plaintiff offered to return the automobile it was in as good a condition as when he received it. The rule is that where the contract is executory because something remains to be done, Martin v. John Clay & Co., Mo.App., 167 S.W.2d 407, a buyer who discovers that he has been defrauded has an election of remedies. He may repudiate the contract, return or offer to return the property, and sue for the amount he has paid, plus interest on his money and any resulting incidental losses and expenses. Or he may affirm the contract, retain the property, and sue for the difference between what he paid and its actual value. Schroeder v. Zykan, Mo.App., 255 S.W.2d 105; Aeolian Co. of Missouri v. Boyd, Mo.App., 65 S.W.2d 111; Salmon v. Brookshire, Mo.App., 301 S.W.2d 48. If the buyer elects to pursue the first of those remedies he must show: (1) that he repudiated the contract and tendered the property to the seller within a reasonable time after he discovered, or in the exercise of ordinary care should have discovered, the ground for repudiation of the contract, Hymer v. Dude Hinton Pontiac, Inc., Mo.App., 332 S.W.2d 467; Jones v. Norman, Mo.App., 228 S.W. 895; and (2), that at the time he tendered the return of the property it was in substantially as good a condition as when he received it, Lebcowitz v. Simms, Mo.App., 300 S.W.2d 827; Smith v. G. F. C. Corp., Mo.App., 255 S.W.2d 69; Winscott v. Frazier, Mo.App., 236 S.W.2d 382; Hymer v. Dude Hinton Pontiac, Inc., supra.

■ The question of what is a reasonable time for repudiation is a question of fact for the jury when fair-minded men reasonably may differ about it. Aeolian Co. of Missouri v. Boyd, supra; Kesinger v. Burtrum, Mo.App., 295 S.W.2d 605; and it is only when the delay is so long that there could be no divergence of opinion about its consequences that the court is warranted in declaring the delay unreasonable as a matter of law. Aeolian Co. of Missouri v. Boyd, supra; Hymer v. Dude Hinton Pontiac, Inc., supra. In that connection, it may be noted that the buyer's delay in repudiation may be defended or explained where it is shown that the seller's action or assurances induced the delay. Witte v. Cooke Tractor Co., Mo.App., 261 S.W.2d 651; Dubinsky v. Lindburg Cadillac Co., Mo.App., 250 S.W.2d 830; Aeolian Co. of Missouri v. Boyd, supra; Laumeier v. Dolph, 145 Mo. App. 78, 130 S.W. 360.

■ Assuming plaintiff's theory of his cause of action to be as stated, he accepted delivery of the automobile on March 15, and according to his own testimony he did not attempt to repudiate the contract, offer to return the car, and demand the return of his money until sometime in November. Ordinarily a delay of over seven months might well be considered unreasonable as a

matter of law, Aeolian Co. of Missouri v. Boyd, supra, but plaintiff also testified that the defendant repeatedly assured him during that period that the matter of his inability to obtain a certificate of title and license with the applications furnished him would be straightened out. Such evidence may preclude plaintiff's delay from being found to have been unreasonable as a matter of law, but the issue of whether plaintiff acted within a reasonable time remained a question of fact for the jury, and in failing to submit that issue plaintiff's Instruction No. 1 was prejudicially erroneous. Under the authorities cited the instruction was likewise erroneous in failing to require the jury to find that the automobile was in as substantially as good a condition when tendered to the defendants as when plaintiff received it. In fact, had that issue been hypothesized its submission would have been erroneous for there was not a shred of evidence as to the condition of the automobile at the time of the tender.

Inasmuch as the case must be remanded for retrial and the questions may again arise, it is in order to touch briefly upon other points raised by defendants. We cannot accept defendants' contention that plaintiff's evidence did not authorize a submission of plaintiff's claim for punitive damages. Parker v. Green, Mo.App., 340 S.W.2d 435. But we concur in their opinion that plaintiff should not have been permitted to cross-examine defendant Francis H. Auffenberg in general as to his other financial interests, since plaintiff sought to recover punitive damages against all five defendants. Dawes v. Starrett, 336 Mo. 897, 82 S.W.2d 43. While it may have been proper to cross-examine defendant Auffenberg as to the business relationship between him and the witnesses who appeared in behalf of defendants, the cross-examination ranged far beyond that point.

For the reasons stated, the Commissioner recommends that the judgment be reversed and that the cause be remanded for a new trial.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court. Accordingly, judgment is reversed and the cause remanded for a new trial.

ANDERSON, P. J., WOLFE, J., and ELGIN T. FULLER, Special Judge, concur.