Joseph D. APPLEBAUM and Sol Bierman, d/b/a Fixture Mart, Plaintiffs-Appellants,

v.

FALCO LEASING COMPANY, a Corporation, Defendant-Respondent.

No. 33441.

St. Louis Court of Appeals.

Missouri.

Nov. 18, 1969.

Julius H. Berg, Lashly, Caruthers, Rava, Hyndman & Rutherford, Alan J. Steinberg, St. Louis, for plaintiffs-appellants.

Anderson, Gilbert, Wolfort, Allen & Bierman, Stuart M. Haw, Jr., St. Louis, for defendant-respondent.

DOERNER, Commissioner.

Claiming that the warranty implied from the sale by defendant to plaintiffs of a new motor vehicle had been breached, plaintiffs elected to pursue one of the two

remedies available to them, Dubinsky v. Lindburg Cadillac Co., Mo.App., 250 S.W. 2d 830, 832, by returning the automobile and suing to recover the full purchase price of $1575, as well as $400 expended for repairs, or a total of $1975. On a trial without a jury the court found for defendant, and this appeal followed.

■ Neither party requested the court to file either findings of fact, or "* * * a brief opinion containing a statement of the grounds for its decision * * *." Civil Rule 73.01(b), V.A.M.R. None was voluntarily filed by the court, and the judgment, rendered in general terms, gives no basis for the court's decision. Accordingly, this being a jury-waived case, we review the cause upon both the law and the evidence as in suits of an equitable nature, keeping in mind that the judgment is not to be set aside unless clearly erroneous, and that due regard is to be given to the opportunity of the trial court to judge the credibility of the witnesses. Civil Rule 73.01(d); Paton v. Buick Motor Divisions, General Motors Corp., Mo., 401 S.W.2d 446; Dubinsky v. Lindburg Cadillac Co., supra.

■ In the light of the nature of their action and the relief they sought, in order to recover the burden was on plaintiffs to show: (1) the breach of the implied warranty of quality or merchantability; (2), that within a reasonable time after plaintiffs knew, or should have known, of the breach they rescinded the contract and returned, or tendered the return, of the motor vehicle; and (3), that the automobile was then in substantially as good condition as it was when plaintiffs received it. Paton v. Buick Motor Divisions, General Motors Corp., supra; Burton v. Auffenberg, Mo.App., 357 S.W.2d 218; Hymer v. Dude Hinton Pontiac, Inc., Mo.App., 332 S.W.2d 467; Dubinsky v. Lindburg Cadillac Co., supra; Kesinger v. Burtrum, Mo.App., 295 S.W.2d 605.

■ As applied to an automobile, the test of breach of warranty of quality or merchantability is not whether a perfect machine was sold to the purchaser, but whether the motor vehicle was reasonably suitable for the ordinary uses for which it was manufactured. Paton v. Buick Motor Divisions, General Motors Corp., supra; Harvey v. Buick Motor Co., Mo.App., 177 S.W. 774. The plaintiffs' evidence, much of it uncontroverted by defendant, amply supports our conclusion that the Sabra truck in question was not reasonably suitable, and that it was inherently defective in material and workmanship. Jacobson v. Broadway Motors, Inc., Mo.App., 430 S. W.2d 602. Purchased by plaintiffs for cash on April 30, 1962, and received by them two or three days later, minor trouble with the truck developed within two or three weeks; doors were loose or wouldn't close properly; cracks developed in the plastic body; and the body sagged. Within a month or six weeks after delivery more serious difficulties developed. A rear axle shaft broke and had to be replaced, and according to plaintiffs' witnesses axle shafts broke on several other occasions between April 30, 1962 and October 18, 1962. Plaintiffs also experienced recurring trouble with the clutch; it would get out of adjustment and not shift properly, the clutch linkage broke, the lower clutch cylinder hung up and broke, and the gear shift lever broke a couple of times. The truck was returned to defendant for repairs of one kind or another on six or eight occasions prior to October 18, 1962, and defendants repaired it without charge. But because defendant carried no inventory of spare parts and the time defendant took to make the repairs was inordinately long, when another axle shaft broke plaintiffs took their vehicle to Reis Automobile and Truck Co., which replaced the axle on October 18, 1962. Other invoices showed that Reis adjusted the clutch and welded the gear shift handle on October 26, 1962, and replaced still another broken axle shaft on November 5, 1962. The truck was given only ordinary, normal usage in plaintiffs' business of servicing refrigeration equipment in the St. Louis metropolitan

area, and Mr. John L. Latsch, the serviceman to whom it was assigned, testified that it was not abused in any way.

Despite the malfunctions which continued to plague plaintiffs, and the time consumed in effecting repairs, which Mr. Applebaum testified resulted in plaintiffs having less than, "* * * one-third of the time actual use of the truck," plaintiffs retained the motor vehicle and continued to use it in their business until sometime in January, 1963, when the lower clutch cylinder hung up and broke, resulting in the loss of fluid. Mr. Applebaum stated that he was so disgusted with the truck because it was out of service frequently and costing so much money to repair that he had the vehicle towed to defendant's yard and "dumped it."

▇▇▇▇ The foregoing evidence, while amply supporting the first of the foregoing elements of plaintiffs' case, raises a serious question as to the second; that is, whether plaintiffs rescinded their contract of sale and returned the truck within a reasonable time after they knew or should have known that it was not reasonably suitable for the purpose for which it was intended. The universal rule is that in a jury-tried case where fair-minded men reasonably may differ as to whether the buyer has exercised his right of rescission with reasonable promptness, the issue remains one of fact; but where, in the light of all of the facts and circumstances in the case, the period suffered to elapse between the buyer's discovery of the grounds for rescission and his attempts to do so, without just cause for such delay, was so long that there reasonably could be no divergence of opinion, then the court may declare as a matter of law that the delay was unreasonable. Stone v. Kies, Mo.App., 227 S.W.2d 85; Dubinsky v. Lindburg Cadillac Co., Mo.App., 250 S.W.2d 830; Aeolian Co. of Missouri v. Boyd, Mo.App., 65 S.W.2d 111. In decisions involving a wide variety of merchandise, a host of which are cited by Judge Stone in Hymer v. Dude Hinton Pontiac, Inc., Mo.App., 332 S.W.2d 467, 470, our appellate courts have held that de-

lays as short as two weeks, Emery v. G. H. Boehmer Shoe Co., 167 Mo.App. 703, 151 S.W. 174; six weeks, Manley v. Crescent Novelty Mfg. Co., 103 Mo.App. 135, 77 S. W. 489; and three months, Long v. International Vending Machine Co., 158 Mo. App. 662, 139 S.W. 819, were unreasonable as a matter of law. However, because a motor vehicle is a highly sophisticated instrumentality, the mechanism of which consists of innumerable intricate parts, the majority of which are inclosed in shields and concealed from the view of an ordinary purchaser, or even a skilled mechanic, Jacobson v. Broadway Motors, Inc., Mo. App., 430 S.W.2d 602, 607, it would generally be unrealistic to hold a purchaser to as short a period of time as two weeks, as in Emery v. G. H. Boehmer Shoe Co., supra, where the tarnished buckles on the shoes were readily apparent to the purchaser on the most casual inspection. In the instant case it is clear from plaintiffs' own evidence that within a period of three or four months the plastic body cracked, the body sagged, doors wouldn't close properly, rear axle shafts repeatedly broke and had to be replaced, difficulty was experienced in shifting, and the clutch continually had to be adjusted or repaired. Yet, despite these many deficiencies and defects, and plaintiffs' testimony that the truck was out of service for repairs more than two-thirds of the time, the record is totally devoid of the slightest indication, much less any direct testimony, that plaintiffs ever complained to defendant about the defective truck or demanded the rescission of their sales contract and the return of the purchase price. Instead, according to plaintiffs' own evidence, long after it should have been readily apparent to them that the vehicle was not reasonably suitable for ordinary usage they continued to use it. In fact, even when plaintiffs "dumped" the truck on defendant's lot, more than eight months after they received it, no demand for rescission was made at that time, nor any explanation offered as to why the vehicle was placed on defendant's lot. And it was not until January 29, 1963, about ten days to two

weeks after the truck had been dumped, that a demand for rescission, contained in a letter from plaintiffs' counsel, was first received by defendant. In the light of plaintiffs' own evidence we hold that the plaintiffs did not attempt to rescind the contract within a reasonable time, and that no just cause or excuse was shown for their failure to do so. Hymer v. Dude Hinton Pontiac, Inc., supra; Stone v. Kies, supra; Jones v. Norman, Mo.App., 228 S. W. 895.

Furthermore, the validity of the third element of plaintiffs' case (that the truck had been returned in as good condition as when received) was likewise completely refuted by plaintiffs' own evidence. In his direct examination Mr. Applebaum testified, as stated, that he had directed that the truck be towed to defendant's lot and dumped thereon. No mention was made by him in his direct examination to any accident or damage to the truck. But when questioned on cross-examination he conceded that while being towed to defendant's lot the truck was struck by a car owned by a third party. He stated that he had inspected the truck after the accident, and that it had not been damaged to any great extent, "* * * I believe just possibly a dent in the fender," as he described it. Mr. Latsch, who was in charge of the towing at the time the accident occurred, described the extent of the damage as, "I believe the right front fender and some of the grill," and estimated the cost of repair as not over $100.00. In sharp conflict to the foregoing testimony was that of Mr. John D. Pearson, defendant's service manager at the time, who produced a detailed written estimate of the damage to the truck, dated February 15, 1963, and who testified that the front end of the truck had been damaged and the radiator had been driven back into the fan. The written estimate, introduced into evidence, itemized the parts requiring replacement as a radiator core, front bumper, right headlight, right parking light, battery and rear bumper, and estimated the cost of the nec-essary parts at $118.50 and labor at $279.-00, or a total of $397.50. Neither Mr. Applebaum nor Mr. Latsch thereafter took the stand to dispute defendant's evidence regarding the extent of the damages the truck had sustained in the accident.

In Hymer v. Dude Hinton Pontiac, Inc., Mo.App., 332 S.W.2d 467, 470, where the record was silent on the condition of the car at the time the purchaser tendered its return, the court observed that, "* * * Common sense and experience suggest the palpable improbability that, after nine months' use by plaintiff, the Pontiac would have been 'in as good a condition as when traded' * * *." In the instant case, plaintiffs not only failed to show that at the time they dumped the truck on defendant's lot, after using it for over eight months, it was in substantially as good a condition as when they bought it, but they conceded, albeit somewhat reluctantly, that it had been involved in an accident with a third party and had been damaged. While there was an apparent conflict in the evidence as to the extent of that damage, the vagueness and paucity of plaintiffs' testimony on the subject and the defendant's clear-cut, forthright evidence thereon compels our conclusion that the truck had been extensively damaged. Having failed to show that the truck was in substantially as good a condition as when plaintiffs purchased it, for that reason alone plaintiffs were not entitled to recover. Hymer v. Dude Hinton Pontiac, Inc., supra; Burton v. Auffenberg, Mo. App., 357 S.W.2d 218; Kesinger v. Burtrum, Mo.App., 295 S.W.2d 605.

For the reasons stated the judgment is affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.