**FORD MOTOR CREDIT COMPANY, Appellant,**

v.

**Robert and Delores MELLOR, Respondents.**

**No. 52768.**

Missouri Court of Appeals, Eastern District, Division Five.

April 19, 1988.

Floyd T. Norrick, Thurman, Smith, Howald, Weber & Bowles, Hillsboro, for appellant.

Patrick J. Healey, Law Office of Patrick J. Healey, Festus, for respondents.

CARL R. GAERTNER, Judge.

Following defendants' default on an installment loan, plaintiff, Ford Motor Credit Company, sued for the deficiency remaining after repossession and sale of an automobile. Plaintiff appeals from an adverse judgment following a jury verdict in defendants' favor. We reverse.

On June 18, 1979, defendants purchased a 1979 Mercury Cougar from Tom Smith Lincoln Mercury, Inc., and entered into an installment sales contract with the seller providing for forty-two monthly payments of $266.40. This contract was duly assigned to plaintiff Ford Motor Credit Company. In August, defendants brought the car to Tom Smith Lincoln complaining of defects with the transmission, brakes, doors, locks, moon roof, and of vibrations. Repairs were made under the manufacturer's warranty. Again in September, after having driven the car 700 miles, defendant complained to Tom Smith Lincoln about the moon roof and the transmission and repairs were again made. There was testimony that defendants took the car in to Tom Smith Lincoln, perhaps a half dozen times in the year after the purchase. There was further evidence that in June, 1980, defendants took the car to a dealer in De Soto, Missouri, for repairs to the rear end, rear axle, and the computer box. At that time, the car had been driven about 15,000 miles and had caught fire. Finally, in November 1980, defendants took the car to Leader Lincoln (the successor to Tom Smith Lincoln) again complaining of problems with the transmission, doors, locks, moon roof, and brakes. When told the car was no longer under warranty, defendants refused to pay for repairs. The car, with 22,936 miles on the odometer, was left at Leader Lincoln. Defendants told plaintiff the car could be picked up at that location. Defendants' record of compliance with the installment contract was also marked by problems. Their check for the January 1980 payment was returned for insufficient funds. They arranged with plaintiff for late payment of the April and May installments. They permitted the insurance coverage on the car to lapse in June 1980. Every payment from July to October was late. No payments were made after November 1980.

On January 20, 1981, after due notice to defendants, plaintiff repossessed the car. After notice to defendants, the car was sold to the highest of three bidders for $4,775. After crediting defendants' account with this amount, there remained a deficiency under the installment sale contract of $2,582.74. The contract provided for interest at an annual percentage rate of 14.44% and for a 15% attorney's fee for collection.

Defendants do not dispute any of these facts. Their sole defense to plaintiff's claim for a deficiency judgment is their contention that the "voluntary repossession" constitutes a revocation of acceptance pursuant to § 400.2–608 RSMo.1986, which provides:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it.

\*　　\*　　\*　　\*　　\*　　\*

(2) Revocation of acceptance must occur *within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects.* It is not effective until buyer notifies the seller of it (emphasis added).

In *Fitzgerald v. Don Darr Ford, Inc.*, 729 S.W.2d 256 (Mo.App.1987), we held, as a matter of law, a purchaser was not entitled to rescind the purchase of an automobile twelve months and 30,000 miles after the purchase. In *Bryant v. Prenger*, 717 S.W.2d 242 (Mo.App.1986), use of an automobile for six months and 12,000 miles after the buyer discovered the automobile's nonconformity with representation made at the time of sale was held to nullify buyer's right of revocation under the statute. In *General Motors Acceptance Corp. v. Dieckmann*, 675 S.W.2d 469 (Mo.App.1984), we affirmed a trial court's finding that nineteen months after purchase an attempted revocation of acceptance was not seasonable. In *Applebaum v. Falco Leasing Co.*, 447 S.W.2d 799, 802 (Mo.App. 1969), the court held that where the buyers discovered defects shortly after they purchased a truck, an eight month delay before attempting recision was unseasonable even though the buyer returned the truck for repairs on six or eight occasions. The court found that:

> where, in light of all the facts and circumstances in the case, the period suffered to elapse between the buyer's discovery of the grounds for rescission and his attempts to do so, without just cause for such delay, was so long that there reasonably could be no divergence of opinion, then the court may declare as a matter of law that the delay was unseasonable.

*Id.*

In the light of these decisions, we are constrained to hold that the use of the automobile for seventeen months and 22,936 miles, as a matter of law, deprived defendants of the right to invoke § 400.2–608 RSMo.1986. A revocation of acceptance is not made "within a reasonable time" where a buyer discovered defects with his automobile within two months of its purchase, but drove the car for seventeen months before asserting his right to revoke acceptance. Furthermore, driving an automobile 22,936 miles is a "substantial change in the condition of the goods not caused by their own defects." Section 400.2–608(2) RSMo.1986.

Defendants have not disputed the amount of deficiency claimed by plaintiff, nor have they asserted any defense other than their claimed revocation of acceptance. Under these circumstances, it was error to deny plaintiff's motions for directed verdict and for judgment notwithstanding the verdict. We are directed by Rule 84.14 to finally dispose of the case and to give such judgment as the trial court ought to have given. The undisputed evidence showed that as of the date of trial, December 4, 1986, the balance due plaintiff under the sales contract, including principal interest at an annual rate of 14.44% and a 15% attorney's fee, totaled $5,488.20. Accordingly, the judgment of the trial court is reversed and the cause is remanded with directions to enter judgment as of December 4, 1986, in favor of plaintiff and against defendants in the sum of $5,488.20, plus costs and interest at the rate of 14.44% until satisfaction of the judgment.

SATZ, C.J., and SIMEONE, J., concur.