**HOMAN FARMS, a Missouri Partnership, Respondent,**

v.

**Robert H. CARLETON and Ana Carleton, Appellants.**

**No. WD 47890.**

Missouri Court of Appeals, Western District.

May 3, 1994.

Jerold L. Drake, Stephens, Drake & Larison, Grant City, for appellants.

Scott Ross, Zahnd, Dietrich and Ross, Maryville, for respondent.

Before KENNEDY, P.J., and ULRICH and SPINDEN, JJ.

ULRICH, Judge.

Robert H. Carleton and Ana Carleton, husband and wife, appeal the summary judgment entered for Homan Farms, a partnership, on its claim against them and on their counterclaim. Homan Farms sold farm land to Ludwig C. Renner and Eugenia G. Renner who, to finance their purchase, signed a promissory note payable to Homan Farms. The note was secured by a deed of trust on the property. The Renners then sold the land with additional farm land to Mr. and Mrs. Carleton. The note was defaulted, Homan Farms foreclosed on the deed of trust, and Homan Farms then brought this action against Mr. and Mrs. Carleton for the deficiency. The Carletons raised the defenses of fraud in the inducement and mutual mistake of fact. The trial court entered summary judgment for Homan Farms on its claim and on the Carletons' counterclaim. The Carletons appealed.

The Carletons assert two points on appeal. They claim the trial court erred in entering summary judgment because, they aver, Mr. Renner fraudulently induced them to purchase the property and, thus, the promissory note and the deed of trust on the farm property were voidable. Alternatively, as their second point on appeal, the Carletons contend that the agreement between them and the Renners was the result of mutual mistake, both parties believing that the farm included 1,200 tillable acres when it encompassed fewer acres.

The trial court's order of summary judgment is affirmed.

Homan Farms sold farm acreage in Gentry County to Ludwig C. Renner and Eugenia G. Renner on January 2, 1980. To finance the sale, the Renners signed a promissory note in the amount of $390,000 secured by a deed of trust on the farm. The Renners sold the farm to Robert and Ana Carleton on January 1, 1981. The sale was subject to the deed of trust, and the Carletons specifically agreed to pay the note given by the Renners to Homan Farms.

The Carletons defaulted on the promissory note, and Homan Farms foreclosed on the deed of trust. The farm was sold at the trustee's sale, and Homan Farms purchased the property at the trustee's sale for $225,-000. A deficiency balance existed, including delinquent taxes, in the sum of $209,396.12. This lawsuit was brought against the Carletons for the deficiency.

In defense of Homan Farms' claim, the Carletons contended that they were fraudulently induced to purchase the farm by the representation of seller Ludwig C. Renner that the farm had 1,200 tillable acres. Additionally, the Carletons claim that the realtor who was involved in the sale of the property in behalf of the Renners also represented that the farm included 1,200 tillable acres. Mr. Carleton reviewed the records of the local A.S.C.S. office, and they reflected that the farm had 1,194 tillable acres. After the Carletons purchased the farm, Mr. Carleton initially questioned whether the farm included 1,200 tillable acres when, in June of 1981, he operated a grain drill which reflected that he had planted 860 acres and not 1,200.

The note matured January 1, 1983; in December 1982 the Carletons obtained a one-year extension of the promissory note with Homan Farms in exchange for a higher interest rate.

The Carletons defaulted on the note in the spring of 1983. The Carletons continued to make payments on the farm through January 1983 and contend that they were unaware that the farm consisted of only 910 tillable acres until 1983, when another official measurement of the farm was made available by the local A.S.C.S. office. The Carletons claimed that Mr. Renner's and the realtor's representation of the amount of acreage was false and fraudulent. Mr. Renner acknowledged the false statement but contended that the misrepresentation was a mistake. The Carletons' counterclaim sought recovery for the reasonable value of the improvements they made to the farm which included two grain storage bins.

On April 23, 1993, the trial court entered summary judgment in behalf of Homan Farms and against the Carletons on the claimed deficiency in the amount of $462,-800.48 and against the Carletons on their counterclaim. Mr. and Mrs. Carleton appealed.

■ The Carletons claim, as their first point on appeal, that the trial court erred in granting summary judgment because the seller fraudulently represented that the farm sold included 1200 tillable acres when the farm included 290 fewer tillable acres. Although the Carletons assert fraud, their brief does not support the claim. They claim the representation by Mr. Renner—that the farm contained 1,200 tillable acres when it did not—sufficiently supports an allegation of fraud. They cite no case law to support their position. Point one is abandoned and is denied.

■ As point two on appeal, the Carletons assert that the purchase contract is voidable because the false belief that the farm contained 1200 tillable acres was a mutual mistake of the seller and buyer and that the contract is voidable because of the mistaken belief of the parties.

Rule 74.04 provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 74.04(c). When reviewing appeals from summary judgment, appellate courts review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). The nonmovant is accorded the benefit of all reasonable inferences from the record. *Id.* Because appellate review of summary judgment is essentially de novo, appellate courts apply the same criteria that the trial courts apply when considering the motion for summary judgment initially. *Id.* Just as the trial court considers the submitted record and applies appropriate law to decide a motion for summary judgment, so shall appellate courts determine the propriety of summary judgment in each case appealed from summary judgment. *Id.* The key to summary judgment is the undisputed right to

judgment as a matter of law. *Id.* at 380. "Where the defendant has raised an affirmative defense, the claimant's right to judgment depends just as much on the nonviability of that affirmative defense as it does on the viability of the claimant's claim." *Id.* at 381. The claimant moving for summary judgment just need establish that any affirmative defense asserted by the defense fails as a matter of law. *Id.* An affirmative defense may be defeated by establishing that any one of the facts necessary to support the defense is absent. *Id.*

In this case, Homan Farms is the claimant and movant and the Carletons are defending. The claimant must establish that no genuine issue as to any material fact exists and that it is entitled to judgment as a matter of law. Because the Carletons assert the affirmative defense of mistake, Homan Farms must establish that the affirmative defense fails as a matter of law. *Id.*

The default and deficiency are based on the promissory note with Homan Farms, not the sales contract and note between Mr. Renner and the Carletons. Homan Farms claims, assuming arguendo that both Mr. Renner and the realtor who sold the farm to the Carletons erroneously represented that the farm contained 1200 tillable acres when it comprised only 910 tillable acres, that as a matter of law, the Carletons' affirmative defense fails. Homan Farms asserts that Mr. Carleton learned of the mistake when he first planted the tillable soil in June 1981 because his grain drill disclosed that he planted 860 acres and that he knew he had not planted only 30 remaining acres. He immediately confronted Mr. Renner about the absence of the tillable acreage and offered to return the farm to Mr. Renner. Mr. Renner declined to accept the offer. Mr. Carleton did not make the same request to respondent Homan Farms. Later, on January 6, 1983, Mr. Renner agreed to discount his note from the Carletons by $75,000 if the Carletons paid the note by a date certain and Mr. Renner would waive any deficiency balance if the Carletons failed to pay the remaining debt and the farm reverted back to Mr. Renner. The Carletons accepted Mr. Renner's proposal and agreed to the provisions. Addi-

tionally, Mr. Carleton obtained consensus with Homan Farms after he learned of the absence of tillable acreage. The Homan Farms note matured January 2, 1993, and in December 1992, the Carletons negotiated a one-year extension to this note. The Carletons agreed to a higher rate of interest as consideration for the extension of the note with Homan Farms. The Carletons do not allege that Homan Farms was aware of any mistake between Mr. Renner and the Carletons.

"Equitable relief against mistake is usually limited to parties to the contract or transaction or their privies, and to warrant relief the mistake ordinarily must be a mutual mistake." 30A C.J.S. *Equity* § 46 (1992). Mutual mistake means that both parties did what neither intended to do. *UT Commun. Credit Corp. v. Resort Dev., Inc.,* 861 S.W.2d 699, 707 (Mo.App.1993). Mutual mistake presupposes a prior agreement between the parties that is not accurately recited or preserved in the written document. *Ludlow v. Ahrens,* 812 S.W.2d 245, 248 (Mo.App.1991). None of the cases on mutual mistake cited by the parties involved the situation where the mutual mistake was between one of the parties (the Carletons) and a third party (Mr. Renner) who was not an agent or a predecessor in interest to the other party (Homan Farms) in the case. The mutual mistake was between Mr. Renner and the Carletons. In a lawsuit between those parties mutual mistake may have been a valid source of equitable relief. Any actions or mistake on Mr. Renner's part cannot fairly be attributed to Homan Farms. Homan Farms was not a party to the purchase contract between the Carletons and Mr. Renner, nor did Homan Farms have any interest in the additional farm land that Mr. Renner included in the sale to the Carletons. Homan Farms is a predecessor in interest to Mr. Renner of the land it sold to Mr. Renner. The contract between Homan Farms and the Carletons arose subsequently when the Carletons agreed to be subject to the promissory note and deed of trust on the land Homan Farms had sold to Mr. Renner, to which Mr. Renner was also subject. There was no prior agreement between Homan Farms and the Carletons. The Carletons have not cited any au-

thority that supports the proposition that Mr. Renner's mistake can be attributed to Homan Farms.

■ In the event that sufficient privity between Homan Farms, Mr. Renner and the Carletons could be concocted so as to attribute Mr. Renner's mistake to Homan Farms, the Carletons are seeking equitable rescission.

> Courts of Equity have always refused their aid where the party seeking it has slept on his rights, or by long silence has indicated acquiescence. This principle has found expression in the Latin maxim, *Vigilantibus, non dormeintibus, subvenit equitas,* and its English equivalent, Equity aids the vigilant, not those who slumber on their rights.

30A C.J.S. *Equity* § 115 (1992). Rescission requires the parties to act within a reasonable time once the mistake is discovered. *Stone v. Kies,* 227 S.W.2d 85, 88 (Mo.App. 1950). The court in *Paulson v. Hartzel,* 93 S.W.2d 1095, 1097 (Mo.App.1936), held that in a real estate transaction, a purchaser, having found facts allegedly making a contract voidable, could not continue in possession, receive income from it, default on the deed of trust and then seek rescission after foreclosure.

The Carletons, after they knew or should have known of a material difference between the represented number of tillable acres and the apparent actual number of tillable acres, rather than seeking a court-ordered rescission of the sale with Mr. Renner, sought and obtained concessions from him. The Carletons also obtained an extension on the promissory note from Homan Farms and agreed to a higher interest rate as consideration.[1]

The Carletons not only continued in possession, made improvements and obtained an extension on the note, but they also continued to get income from the land either by farming, selling timber or from federal PIK money. They clearly wanted to remain in possession of the farmland and not rescind the contract.[2]

After foreclosing on the deed of trust, Homan Farms filed this suit September 4, 1984, to recover the deficiency owed on the note. The Carletons filed their answer and counterclaim on November 21, 1984. Neither mutual mistake nor fraud was pleaded until the Carletons filed their second amended answer and first amended counterclaim on September 14, 1989.[3] Five years of legal maneuvering elapsed before the Carletons first raised either fraud or mutual mistake as an affirmative defense.

■ The defense of laches is available against parties seeking rescission of written instruments. Rescission may be denied if the person seeking it has delayed his action unreasonably or if the delay has caused material prejudice to the other party. 12A C.J.S. *Cancellation of Inst.* § 69. "A party seeking rescission must act promptly on discovering the reason and need for his rescission. He must act before the other party has changed his position or is placed in a position where he would be prejudiced by a rescission or where a third party would be harmed by a rescission." *Sheinbein v. First Boston Corp.,* 670 S.W.2d 872, 877 (Mo.App.1984) (citing *Blakeley v. Bradley,* 281 S.W.2d 835 (Mo. 1955). The Carletons did not act with reasonable promptness. Homan Farms, before mistake was alleged, was prejudiced and materially changed its position by, inter alia, extending the due date of the promissory note.

---

1. When Homan Farms extended the time for payment of the note, in good faith, for value and without knowledge of any defenses, Homan Farms would occupy a position similar to that of a bona fide purchaser for value and would hold the note free from any alleged defenses between Mr. Renner and the Carletons. *See Blaise v. Ratliff,* 672 S.W.2d 683, 688 (Mo.App.1984).

2. Mr. Carleton's deposition testimony reflected this: "I wanted to own the farm.... I wanted Homans to call Renner and me to the courthouse steps and declare us both in default.... I knew I was 300 acres short.... And then either [Renner would pay] them or I [would]. And it would resolve my problem with [Renner]." In answer to the question, "Did you demand of either Mr. Smith or Mr. Homan that they pay you your money back and undo the transaction?" Mr. Carleton answered, "No."

3. Mr. Renner died October 12, 1987.

Equity will not aid the Carletons defeat Homan Farms' deficiency judgment. No genuine issues of material fact exist and Homan Farms is entitled to judgment as a matter of law. Rule 74.04(c). Point two is denied.

The trial court's order granting summary judgment is affirmed.

All concur.